James A. LEONARD, et al., Appellants,

v.

Doren R. ESKEW, et al., Appellees.

No. 14645.

Court of Appeals of Texas,
Austin.

May 20, 1987.

Rehearing Denied June 17, 1987.

Jess M. Irwin, III, Small, Craig & Werkenthin, Austin, for appellants.

William C. Bednar, Jr., Eskew, Muir & Bednar, Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

## ON MOTION FOR REHEARING

POWERS, Justice.

We withdraw our opinion of November 19, 1986, and substitute the following opinion.

James A. Leonard and Texas Land & Trading Co., Inc. (appellants) appeal from a district-court judgment that rescinds a contract between Leonard and appellees Doren Eskew, Douglas Muir, and Danny Womack. We conclude appellees' cause of action was barred by limitations. Accordingly, we will reverse the judgment below and render judgment that appellees take nothing.

### THE CONTROVERSY

In the fall of 1976, the three appellees, together with another partner in their law firm who is not a party to this suit, wished to invest in oil and gas properties. Dr. Ralph Kehle, a part-time geology professor and owner of half the shares of capital stock in Texas Land, presented to appellees a proposal for investment centering on a farmout agreement between Leonard and Amoco Production Co. The farmout agreement provided that Leonard must drill a test well on a certain tract and, upon completion of that well to a specified depth, Amoco would assign to Leonard certain leased acreage surrounding the test well. At the time, Leonard owned the other half of the capital stock in Texas Land.

After negotiations, appellees contracted with Leonard to pay one-eighth of the cost of drilling the test well. In exchange, Leonard agreed to convey to appellees, on completion of the test well, one-eighth interest in his rights under the farmout agreement, together with percentage interests in two additional oil and gas leases—the Corsicana and Gaar Leases—purportedly owned by Leonard. Leonard and appel-

lees reduced their agreement to a writing which provides in part as follows:

### AGREEMENT

\* \* \* \* \* \*

This AGREEMENT, made and entered into this [14th day of December, 1976], by and between JAMES A. LEONARD, [address given], hereinafter called "Operator" and ESKEW, BRADY, WOMACK & MUIR, [address given], hereinafter referred to as "Participant".

WHEREAS, Operator represents that it is the holder of the following described FARMOUT AGREEMENT and LEASES:

FARMOUT AGREEMENT; between Amoco Production Company and JAMES A. LEONARD ...

LEASES; certain Oil and Gas Leases totaling 540.81 acres more or less, located in Burleson Co., Texas, and more fully described in Exhibit A–5.

WHEREAS, Operator agrees that Participant may acquire an interest in said lands described in Exhibit A–1 and Exhibit A–5, under the provisions of said FARMOUT AGREEMENT attached as Exhibit E, and under the terms and conditions hereinafter set forth.

NOW, THEREFORE, for and in consideration of the mutual convenents [sic] and agreements hereinafter set forth, it is agreed by and between the parties as follows: to wit:

\* \* \* \* \* \*

7. *Assignment of Interests upon Completion of Test Well as a Producing Well:* Upon completion of the test well in accordance with all of the terms and provisions of this agreement, as a producing well, Operator agrees to execute and deliver to Participant an appropriate instrument conveying to Participant Twelve and One-Half percent (12.5%) of the operating rights and working interest earned by Operator in the "drill site" as defined by and earned in accordance with the aforementioned FARMOUT AGREEMENT (Exhibit E), and Twelve and One-Half percent (12.5%) of the operating rights and working interest in the Texas Land & Trading Co. Lease # 1, Exhibit A–5 and 10.9375% of Lease # 2, Exhibit A–5. It is understood that this assignment of operating rights and working interest is subject to all of the provisions of said FARMOUT AGREEMENT (Exhibit E) and to the terms and conditions of the LEASES.

\* \* \* \* \* \*

### EXHIBIT A–5

**Lease #1**

| | |
|---|---|
| Lessor: | First National Bank of Corsicana |
| Lessee: | Texas Land & Trading Co. |
| Date: | March 9, 1976 |
| Term: | 3 years |
| Acreage: | 312.5 acres |
| Recorded: | Vol. ___, Page ___, Oil Lease Records, Burleson Co., Texas |

**Lease #2**

| | |
|---|---|
| Lessor: | Basil L. Gaar et ux. |
| Lessee: | Marshall A. Harrell |
| Date: | March 3, 1976 |
| Term: | 5 years |
| Acreage: | 228.31 acres |
| Recorded: | Vol. 15, Page 777, Oil Lease Records, Burleson Co., Texas |

Appellees paid the requisite one-eighth of the drilling cost of the test well which Leonard completed in March or April 1977. The well was a producing well and, within a few months of its completion, appellees began receiving royalty checks representing their share of the production. The well initially produced substantial quantities of oil, but over time the production declined and the amount of the royalty checks diminished accordingly. Moreover, Leonard never performed his agreement to convey to appellees the percentage interest in the Corsicana and Gaar Leases, as he was obligated to do in the event the test well was a producing well.

Prompted by the slow return on their investment, appellees expressed their dissatisfaction to Leonard in a letter dated October 9, 1978. In the letter, they also complained that Leonard had not conveyed to them the promised interest in the Corsicana and Gaar Leases, expressed doubt as to Leonard's competence to make such conveyance for want of an ownership interest in them, and demanded a return of the money they had paid for drilling the test well. Leonard immediately responded by

letter and, among other things, assured appellees of his ownership of the Gaar and Corsicana Leases and his legal right to convey them to appellees.

Approximately one year later, in September 1979, appellees and Leonard met to discuss the controversy. It was not resolved, however, and on September 24, 1981, appellees filed their original petition in the present cause, alleging causes of action for securities fraud, fraud in a real-estate transaction, breach of contract, and deceptive-trade practices, for which they requested substantial money damages. In the alternative, appellees requested rescission of their contract with Leonard. All the causes of action were founded upon fraudulent representations allegedly made by Leonard. Following a bench trial, the district court rendered judgment in favor of appellees.

## FRAUDULENT CONCEALMENT OF A CAUSE OF ACTION VERSUS ESTOPPEL BASED UPON INDUCING A PLAINTIFF NOT TO SUE WITHIN A LIMITATIONS PERIOD

■ We should first discuss a distinction that goes to the core of the controversy on appeal. It is the distinction that exists between two different grounds that will, in equity, deprive a defendant of any benefit he might otherwise obtain from the bar of a statute of limitations: (1) a defendant's conduct in concealing from the plaintiff the facts necessary for him to know that he has a cause of action against the defendant; and (2) a defendant's conduct in inducing the plaintiff not to bring a timely suit on a cause of action that he knows he possesses against the defendant. While both arise in equity, they are entirely different in theory and in their requisite elements.

■ *Fraudulent Concealment of Facts Necessary to a Cause of Action.* Statutes of limitation ordinarily provide that the limitations period commences with the "accrual" of the plaintiff's cause of action. Related statutes often provide that such "accrual" or even the running of limitations may be "tolled" or suspended by

specified events or circumstances—for example, a defendant's imprisonment or the plaintiff's minority or unsound mind. Ordinarily, once the limitations period commences to run, nothing will stop it except such an event, spelled out in a statute. *Tyson v. Britton,* 6 Tex. 222 (1851). Generally, these specific statutory provisions for "tolling" or suspending the limitations period would, by necessary implication, exclude the possibility that any *other* event or circumstances might have that effect. There is, however, an exception to this ordinary implication: the limitations period may be "tolled" or suspended when the defendant conceals from the plaintiff facts necessary for him to know that he has a cause of action that has accrued against the defendant:

> In Texas, under the general limitation statutes, limitation begins to run from the time of the accrual of the cause of action. However, generally speaking, the statute is *tolled* when by reason of fraud or concealment the defalcation or dereliction is kept hidden, until such time as knowledge is had of the defalcation, or in the exercise of reasonable diligence it might have become discovered [citations omitted]. Where a relationship of trust and confidence exists between the parties, the rule is that limitation *starts to run* only from the time of actual discovery of the fraud [citations omitted].

*Franklin County v. Tittle,* 189 S.W.2d 773, 774–75 (Tex.Civ.App.1945, writ ref'd) (emphasis added). *See also,* Estate of *Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex.1980) ("limitations *begin to run* from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence" (emphasis added)). The gist of the fraudulent concealment is the defendant's active suppression of the truth or his failure to disclose when he is under a duty to disclose, *concerning the facts necessary for the plaintiff to know that he has a cause of action, that has accrued. Owen v. King,* 111 S.W.2d 695 (Tex.1938). The plaintiff must, of course, exercise reasonable diligence to discover what has been

hidden from him by the defendant and the period of tolling may not extend beyond the time the plaintiff actually acquired knowledge of the facts or should have acquired such knowledge by the exercise of reasonable diligence. It should be noted, however, that the result is to "toll" or suspend the limitations period for the requisite time. *Franklin County v. Tittle, supra.* This is entirely different in comparison to the other ground for depriving a defendant of the limitations bar.

 *Estoppel to Interpose the Limitations Bar Based Upon Words or Conduct, by the Defendant, that Induce Plaintiff Not to File Timely Suit on His Cause of Action.* Under the familiar rules of equitable estoppel, applicable to a whole range of conduct in numerous contexts, a defendant may be estopped to interpose the limitations bar, which would otherwise be available to him, when he has induced the plaintiff not to file suit within the limitations period. The essential elements of such estoppel are: that the defendant, by his words or conduct, induced the plaintiff to delay filing his cause of action beyond the time permitted by the applicable statute of limitations, unmixed with any want of diligence on the plaintiff's part. *City of Waco v. Thralls,* 172 S.W.2d 142 (Tex.Civ. App.1943, writ ref'd w.o.m.); *Panhandle Construction Co. v. Hood,* 114 S.W.2d 632 (Tex.Civ.App.1938, writ ref'd); *Phillips v. Baker,* 114 S.W.2d 421 (Tex.Civ.App.1938, writ ref'd); *Nassar v. Nelson,* 112 S.W.2d 757 (Tex.Civ.App.1938, writ ref'd); *see generally,* Annot. 44 A.L.R.3d 760 (1972). The effect of such estoppel is *not* to "toll" or suspend the running of the limitations period prescribed in a particular statute of limitations; rather, the effect is simply to preclude the defendant's interposing the limitations bar when he has induced the plaintiff not to file suit, within the limitations period on a cause of action the plaintiff *knows* he has. This assumes the cause of action has accrued. While this ground also requires that the plaintiff be diligent, it is diligence pertaining to a different matter entirely. He must be diligent to file the cause of action he knows he has; he may not continue to rely upon the defendant's

original inducement beyond a point when it becomes unreasonable to do so; or, as stated in *Neal v. Pickett,* 280 S.W. 748, 753 (Tex.Comm.App.1926, jdgmt adopted):

> ... one claiming suspended operation of the statutes of limitations, or *estoppel against their apparent effect,* must have not ignored the requirements of due care and blindly relied upon a situation as being what it seemed rather than as being what it in reality was.

(emphasis added); *see also, Panhandle Construction Co. v. Hood, supra,* at 634.

Thus, the defendant's conduct and the diligence required of the plaintiff are different with regard to the two grounds upon which equity will deprive a defendant of the benefit of the limitations bar. The one presupposes the plaintiff is ignorant of the facts necessary to constitute the accrual of a cause of action; the other presupposes that the plaintiff knows those facts but does not sue on the cause of action because the defendant has induced him not to sue. The one operates on a theory of "tolling" the limitations period for the period of the plaintiff's ignorance; the other directly forbids the defendant to interpose the limitations bar so long as the plaintiff is reasonable in relying upon the defendant's inducement not to sue.

## CONSTRUCTION OF THE TRIAL–COURT JUDGMENT

Appellants assail the trial-court judgment by twenty points of error. Before we may evaluate those assignments of error, we must ascertain the meaning and legal effect of the judgment. In so doing, we are guided by the following rules:

> We are required, in passing upon the validity of said judgment, to so construe its provisions, if we can do so without violence to the language used, as to sustain the same. Necessary legal implications are included, although not expressed in terms, and the legal effect rather than the mere language used governs. If susceptible of more than one interpretation, that one should be adopted which will render it the more

reasonable, effective, and conclusive, and which will make it harmonize with the facts and law of the case and be such as ought to have been rendered.

*Keton v. Clark,* 67 S.W.2d 437, 439 (Tex. Civ.App.1934, writ ref'd).

We shall first quote the findings of fact and conclusions of law made by the trial court, for they are essential to an understanding of the legal effect of the judgment, whether arising from its express provisions or by necessary implication therefrom.

*Findings of Fact*

1. Prior to the execution of the Agreement dated December 14, 1976, Defendants represented to Plaintiffs that James A. Leonard was the holder of [the Corsicana and Gaar Leases] and ... could thereby convey to plaintiffs a certain undivided interest of [sic] said leases.

2. At the time the Agreement ... was entered into neither Defendant held title to the ... leases ..., and neither defendant could thereby convey to plaintiffs the undivided interests in said leases.

3. Defendants represented to plaintiffs that the Agreement ... conferred upon plaintiffs the right to receive certain conveyances of oil and gas leases which it [sic] did not have.

4. Defendants failed to disclose to plaintiffs [that others held title to the two leases and that defendants' claimed interests were contingent only under one unwritten contract and under a written contract that had not been recorded], which failures to disclose were intended to induce plaintiffs into the transaction into which plaintiffs would not have entered had the information been disclosed.

5. Plaintiffs were never told by defendants, did not know and could not reasonably have known about [the two foregoing agreements between defendants and others].

6. In October 1978, and again in September 1979, defendants told plaintiffs that defendants had the right to make any assignments under the Agreement dated December 14, 1976 [including the Corsicana and Gaar Leases], and that they would do so, which statements reasonably induced plaintiffs to refrain from commencing their suit.

7. Attorney's fees for plaintiff of $13,-500.00 are reasonable and necessary attorney's fees.

8. In order to restore to plaintiffs the money acquired by defendants in violation of the Deceptive Trade Practices—Consumer Protection Act, plaintiffs and defendants are entitled to recover prejudgment interest at the rate of 10% per annum compounded daily on all sums paid by the respective parties.

*Conclusions of Law*

1. Defendants violated §§ 17.46(a) and 17.46(b)(12) of the Deceptive Trade Practices—Consumer Protection Act.

2. Defendants are estopped and barred from asserting limitations or laches regarding their statements or failures to disclose in regard to the ownership, title and assignment rights of [the Corsicana and Gaar Leases].

3. Plaintiffs are entitled to recover $30,-890.53, the money paid to defendants, less $17,757.85, the money previously received by plaintiffs, in order to restore to plaintiffs any money acquired by defendants in violation of the Deceptive Trade Practices—Consumer Protection Act.

4. Plaintiffs and defendants are entitled to recover prejudgment interest at the rate of 10% per annum compounded daily on sums paid by the respective parties.

The judgment itself provides as follows:

. * * * * * *

The Court, after hearing the evidence and arguments of counsel, rendered judgment on August 14, 1985, that the plaintiffs are entitled to recover of and from the defendants the sum of $30,-890.53 [plus interest], less sums previously paid to plaintiffs in the amount of $17,757.85 [plus interest]; and that the agreement sued on should be at an end and of no further force and effect.

It is therefore, ORDERED, ADJUDGED, AND DECREED by the Court that

[plaintiffs] have and recover from [defendants], jointly and severally, the sum of $29,172.17....

It is further ORDERED that the agreement between the parties herein be at an end and of no further force and effect and that any interests held by [plaintiffs in the Corsicana and Gaar Leases] under the terms of said agreement ... be in all things divested out of the said plaintiffs and title to same vested in the said defendants.

\* \* \* \* \* \*

.... All other relief not expressly granted herein is denied.

\* \* \* \* \* \*

What then did the trial court decide in its judgment?

 *Relief Ordered in the Judgment.* The judgment ultimately awards only one form of relief—rescission of the parties' contract. There is some basis for this relief in appellees' trial petition, wherein they averred their readiness to return the consideration received by them in the transaction, which they were induced to enter by appellants' misrepresentations that they possessed legal capacity to convey to appellees a percentage of appellants' ownership interest in the Corsicana and Gaar Leases.[1] The remedy of rescission requires that the parties be restored to the positions they occupied before the contract was made. The judgment and attendant findings of fact and conclusions of law reflect that such restoration was effectuated in the following manner. Appellees were awarded a recovery of money damages, in the amount of $30,890.53, on their statutory cause of action brought under authority of the Deceptive Trade Practices—Consumer Protec-

tion Act, §§ 17.46(a) and 17.46(b)(12), 1973 Tex.Gen. Laws, ch. 143, § 1, at 323–324 (amended 1979). The cause of action was predicated on appellees' allegations that appellants' misrepresentations (the same as those alleged as a basis for rescission) amounted to representations that the parties' contract conferred upon appellees rights that it did not in truth confer. Sections 17.46(a) and 17.46(b)(12) make such misrepresentations actionable and authorize a "consumer" to recover any "actual damages" resulting from them. The judgment determines, however, that appellees had previously received from appellants the sum of $17,757.85 (in royalties). Concerning this sum, which must be restored to appellants, and the $30,890.53 which must be restored to appellees, the judgment declares that each shall bear prejudgment interest at the annual rate of 10% compounded annually. Then it credits appellants with the smaller sum and awards appellees the larger sum. In the adjustment, the judgment evidently takes into account the matter of prejudgment interest and ultimately awards appellees judgment for the net sum of $29,172.17. Appellants are also restored to their previous position by the simple expedient of declaring in the judgment that any title acquired by appellees under the contract is divested from them and vested in appellants. Thus, the judgment ultimately reflects only a single form of relief—rescission of the parties' contract. We infer the foregoing from the judgment itself, finding of fact number eight, and conclusion of law number three.

 *Determinations Necessarily Implied.* We are, of course, bound to assume the validity of the judgment. This

1. We refer to the following allegations contained in appellees' Third Amended Original Petition:

Within the meaning of the Texas Business and Commerce Code § 27.01, defendant made to plaintiff false representations of past or existing material facts as more fully set out above in paragraph II, for the purpose of inducing plaintiffs to enter into a contract ..., which plaintiffs relied upon in entering into the contract.... Because of defendant's false and fraudulent misrepresentations, plaintiffs were damaged and defendant is liable to plaintiffs

for the consideration plaintiffs paid to defendant in the amount of $30,890.53, and, upon the condition that defendant restore said consideration to plaintiffs together with interest thereon, plaintiffs offer to restore to defendants all consideration received from them in the amount of $17,532.68....

Nothing in the pleading offered similarly to reconvey the real-property interest acquired by appellees; however, we assume this was within the intention of their prayer for general relief as it was essential to the trial court's judgment rescinding the parties' contract.

assumption in turn requires that we construe the judgment itself and any attendant findings of fact and conclusions of law in a way that sustains the judgment, if we are able to do so without doing violence to the language used. This includes a requirement that we assume the trial court determined favorably to the judgment any omitted findings of fact or conclusions of law necessary to the relief ordered. These familiar rules are subject, however, to this qualification: because the trial-court judgment rests upon the *specific* grounds set out in the findings of fact and conclusions of law that accompany the judgment, we are not permitted to assume omitted findings or conclusions necessary to any *other* grounds for the judgment, even though such other grounds be pleaded in the case. *See E.F. Hutton & Company, Inc. v. Fox,* 518 S.W.2d 849 (Tex.Civ.App.1974, writ ref'd n.r.e.); 4 McDonald, *Texas Civil Practice* § 16.09 (rev.ed. 1984). We turn then to the proper construction to be given the trial-court judgment under the foregoing rules of interpretation.

Concerning first the equitable remedy of rescission, awarded in the judgment instrument itself, we observe that no conclusion of law expressly determines favorably to appellees, and the judgment, *all* the essential elements of that cause of action: a material misrepresentation made by appellants, upon which appellees were entitled to rely, and did rely, to their injury. *See*

*Boles v. Aldridge,* 107 Tex. 209, 175 S.W. 1052 (1915); *Milby v. Hester,* 94 S.W. 178 (Tex.Civ.App.1906, writ ref'd). Nevertheless, the judgment awards rescission in express terms and findings of fact one through five plainly establish at least the *one essential element of misrepresentation.* We must therefore assume the trial court determined favorably to appellees the remaining elements pertaining to their reliance thereon and resulting injury.

■ Concerning next the bar of limitations interposed by appellants, we find a similar mixture of express and implied determinations.[2] We have noted that the judgment expressly awards the rescission requested by appellees. Thus, the court necessarily concluded that appellees' request for such relief was *not* barred by limitation, as appellants contended. The basis for this is stated in the trial court's conclusion of law number two: appellants were "estopped and barred from asserting limitations." Upon what basis does the estoppel rest? The possible grounds are found in the trial court's findings of fact one through six. These do *not* establish a basis for estoppel based upon appellants *concealment of a cause of action,* but finding of fact number six *does* establish, *in explicit terms,* that the ground for estoppel intended in the judgment was the trial court's determination that appellants, by their reassurances in October 1978 and

---

2. We infer from appellees' Third Amended Original petition a pleading of estoppel against limitations, based both upon the fraudulent concealment of a cause of action *and* upon acts inducing appellees not to file suit. In two paragraphs of the petition, appellees alleged as follows:

> Plaintiffs deny that their causes of action are barred by limitation or laches, but nevertheless would show the Court that the defendants have at all material times falsely stated and implied ... that defendants have the right to convey and are able and willing to convey the undivided interests in oil and gas leases, operating rights, and working interest pursuant to the agreement ... with knowledge of the falsity of such statements and implications; that plaintiffs were thereby *induced to refrain from filing this suit;* and *that defendants are therefore estopped from asserting the defenses of limitation* and laches pleaded in their first amended original answer in this cause.
> 
> \* \* \* \* \* \*

> [Introductory statement same as in foregoing paragraph] ... that such statements and conduct were false statements of material fact made to be acted upon by plaintiffs; that plaintiffs actually believed and acted on such statements and conduct to their consequent injury *in refraining from filing this suit;* and that defendants are therefore barred from asserting the defense of limitation and laches *by reason of their fraudulent concealment of plaintiffs' causes of action.* (emphasis added).

It is readily apparent, of course, that these allegations are less than clear as to whether appellees intended only one or both of the two grounds upon which a defendant may be equitably estopped to interpose the limitations bar: fraudulent concealment of the facts necessary to a cause of action and conduct inducing the plaintiff not to file suit within the limitations period. We may assume, however, that appellees intended to plead both theories.

September 1979, *induced appellees not to file their suit before the bar of limitations arose.* We conclude as we do, in this regard, for the following reasons.

Finding of fact number six, of course, *expressly* and quite *specifically* establishes that the estoppel declared in conclusion of law number two rests upon appellants' inducing appellees not to file their suit before the bar of limitations arose. This is indisputable. In contrast, there is *no* finding of fact that even indirectly suggests that appellants ever *concealed* from appellees their *cause of action.* What then *do* findings of fact one through five determine? Findings of fact one and two jointly determine that appellants misrepresented, *at the time of contracting,* their legal capacity to convey good title to a fractional interest in the two leases; number three determines that appellants misrepresented the *legal effect of the contract instrument;* number four determines that appellants were *induced to enter the contract* by appellants' concealment of the fact that *their interests in the two leases were contingent and unrecorded;* and, number five determines that appellees were never informed and could not reasonably have known *that appellants' interests were contingent and unrecorded.* These do establish, of course, the grounds for rescission based upon causes of action for fraud or misrepresentation—relief that could have been granted appellees, even without misrepresentation, when appellants failed to convey good title within the time required by the contract. But, they do *not* establish in any sense whatever the accrual of a cause of action for rescission, unknown to appellees, which appellants concealed from them. Indeed, it is difficult to understand how this could possibly be the case under the undisputed evidence that appellees: (1) knew they had a contract right to receive from appellants a conveyance of the specified fractional interest in the two leases; and (2) knew they had not received such a conveyance for a long period after they had performed fully their contract obligations. This was all appellees had to know in order to know that a cause of action for rescission had accrued in their favor—it was enough that

appellants had simply breached a material obligation under the contract. *Albright v. Hoyt,* 57 S.W.2d 342 (Tex.Civ.App.1933, writ ref'd).

Moreover, because the trial court expressly and explicitly determined that appellants were estopped to interpose the limitations bar, and because they induced appellees not to file suit within the limitations period, we may not infer the contrary facts necessary to a theory that appellants concealed from appellees the facts necessary to constitute their cause of action. The two are mutually exclusive as to the facts they require. The one theory, enunciated expressly in the findings of fact and conclusions of law, presupposes appellees knew the necessary facts but refrained from filing suit owing to appellants' inducement; the other theory, concerning which the findings of fact and conclusions of law are silent, presupposes appellees did *not* know the facts necessary to apprise them they had a cause of action.

We hold then that the estoppel that forms the basis of the trial-court judgment and its conclusion of law number two is grounded solely upon the court's determination (set out explicitly in finding of fact number six) that appellants had induced appellees not to file their suit in time to avoid the bar of limitations being raised against it.

As discussed heretofore, the essential elements that appellees were bound to show, in order to establish this ground for estoppel to interpose limitations, were as follows: that appellants, by their words or conduct, induced appellees to delay the filing of their cause of action beyond the time permitted by the applicable statute of limitations, unmixed with any want of diligence on appellees' part. Owing to the trial court's judgment of rescission and its conclusion of law number two, we must assume the trial court decided favorably to appellees and the judgment on these elements.

We conclude, however, that there is no evidence to support the implied finding that appellees were diligent in the period intervening between the making of the last re-

assurance, in September 1979, and the date the bar of limitations first arose. Before discussing that matter, however, we should set out the legal effect of the trial court's conclusion of law number two—a necessary legal effect we are not free to ignore.

By its determination that appellants were estopped to interpose the limitations bar, the trial court necessarily determined, by implication, the following matters: (1) appellees' cause of action for rescission *was in law barred* by limitations *when it was filed* September 24, 1981, for *unless* this be so, there would be no reason for the trial court's express determination that appellants were estopped to interpose the limitations bar; (2) when the last reassurance was given in September 1979, appellees *knew* they possessed a cause of action for rescission, for *unless* they did, they could not have been *induced* "to refrain from commencing their suit," as the trial court determined in its finding of fact number six.

We turn then to the sufficiency of the evidence to support the one ground of equitable estoppel upon which the judgment specifically rests: that appellants were estopped by their words or conduct from interposing the limitations bar when they had induced appellees not to file suit within the limitations period.

### ESTOPPEL TO INTERPOSE LIMITATIONS AS A PLEA IN BAR OF APPELLEES' ACTIONS

Many of appellants' points of error become irrelevant in light of our construction of the trial-court judgment and the rule that we may not infer omitted determinations other than those implied in the specific grounds upon which the judgment rests. This is true, for example, with regard to appellants' contentions regarding the theory that they concealed from appellees their cause of action.

In three points of error, however, appellants attack the validity of the trial court's determination that they were equitably estopped to interpose the limitations bar owing to their representations in October 1978 and September 1979, which induced appel-lees not to file their suit within the period allowed by the applicable statute of limitations. In various particulars, they argue there is no evidence or insufficient evidence to support the essential elements of equitable estoppel, including the requirement and implied finding by the trial court that appellees' failure to assert their cause of action, after they knew they possessed it but before the limitations bar arose, was not caused by a lack of diligence.

We should first observe that *appellees* have not attacked the validity of the trial-court judgment, or any of its findings of fact and conclusions of law, as they were privileged to do under Tex.R.App.P. 74(e) (West 1986). Thus, these express determinations and any necessarily implied from the judgment, are as binding on appellees as on appellants. This includes the necessarily implied finding that they knew in October 1979 that they had a right to bring their cause of action for rescission, based upon the representation made in that month; and, the implied finding that their cause of action was barred by limitation when it was filed September 24, 1981.

We must next determine when the bar of limitations first arose. It is necessarily implied, of course, that it arose sometime *before* September 24, 1981, when appellees filed their suit. And, it must have first arisen sometime *after* September 1979, for it would make no sense for the trial court to erect the estoppel on a determination that appellees' were induced not to file a suit that was *already* barred by limitations. We conclude that the trial court applied the residual four-year statute of limitations found formerly in Tex.Rev. Civ.Stat.Ann. art. 5529 (1958), and found presently in Tex.Civ.Prac. & Rem.Code Ann. § 16.051 (1986). We believe, moreover, that the trial court was correct in doing so. *See National Resort Communities, Inc. v. Holleman,* 594 S.W.2d 195 (Tex.Civ.App.1980, writ ref'd n.r.e.); Goodell, *Need Rescission Be Sought Within A Reasonable Time?,* 8 Tex.L.Rev. 342 (1930).

The four-year period of limitations would commence to run, under the statutory terms, with the "accrual" of appellees' cause of action for rescission. When then did it so "accrue"? For the bar to have arisen between September 1979 and September 24, 1981, the cause of action must have accrued four years before any day in the period. Under the evidence, that could only be December 14, 1976—the date when the contract was made—on a theory and an implied determination that appellees had *constructive* notice on that day (irrespective of whether they had *actual* notice) of what the deed records would have revealed concerning the true state of appellants' title in the Corsicana and Gaar Leases. That is to say, the trial court must have concluded as a matter of law that appellees were bound by the irrebutable presumption of knowledge, about such matters, created by the terms of Tex.Rev.Civ.Stat.Ann. art. 6646 (1958). We believe the trial court was correct in this as well. *See Mooney v. Harlin,* 622 S.W.2d 83 (Tex.1981); *White v. Bond,* 362 S.W.2d 295 (Tex.1962); *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319 (1941); *Hexter v. Pratt,* 10 S.W.2d 692 (Tex.Comm.App.1928, jdgmt adopted). There is no evidence, finding, conclusion, and even no contention that appellants, by their words or conduct, ever prevented appellees having access to the deed records or that these records would not have given actual notice of circumstances that would cause a reasonably prudent person to investigate. Therefore, the bar of limitations arose, under the trial court's express and implied determinations, on December 14, 1980, four years after the making of the contract. We reject appellees' argument that they had no *duty* to investigate the deed records. The trial court impliedly determined they did and no appeal has been taken by appellees from that determination or any other aspect of the judgment below.

"One claiming suspended operation of the statutes of limitation, *or estoppel against their apparent effect,* must not have ignored the requisites of due care and blindly relied upon a situation as being what it seemed rather than as being what it in reality was." (emphasis added). *Neal v. Pickett, supra; see also Panhandle Construction Co. v. Hood, supra.* The record is silent regarding any semblance of a justification for appellees' delay in bringing suit between September 1979 (when they knew they had a cause of action) and September 14, 1980 (when the bar of limitation first arose). We must therefore hold there is no evidence to support the trial court's necessarily implied determination that appellants were diligent in the assertion of their rights after September 1979.

We consequently reverse the judgment below and render judgment that appellees take nothing by their suit.

BRADY, Justice, dissenting.

I respectfully dissent.

The majority opinion states that the judgment of the trial court "awards ultimately only one form of relief—rescission of the parties' contract." However, the pleadings of the plaintiffs clearly set out that this was a suit for securities and real estate fraud, violation of the Deceptive Trade Practices Act, breach of contract, and common law fraud arising out of an oil and gas transaction in 1976. The findings of fact and conclusions of law also clearly set out a violation of §§ 17.46(a) and 17.46(b)(12) of the DTPA. Furthermore damages awarded by the trial court clearly indicate that they are "to restore to plaintiffs any money acquired by defendants in violation of the Deceptive Trade Practices—Consumer Protection Act." See Conclusion of Law No. 1 and 3, as set out in the majority opinion. The fact that the same relief awarded under a DTPA suit could also be relief granted by rescission should not preclude the resort to Tex.R.Civ.P.Ann. 299, which reads:

Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; *but where one or more elements thereof have been found by the*

*trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment.* Refusal of the court to make a finding requested shall be reviewable on appeal. (emphasis mine).

In the case cited by the majority, *E.F. Hutton & Co., Inc. v. Fox,* 518 S.W.2d 849 (Tex.Civ.App.1974, writ ref'd n.r.e.), it was held that, while omitted elements of recovery or defense will be supplied by presumption in support of the judgment, this rule does not authorize an appellate court to presume findings on theory of recovery which was not raised by pleadings. In this case, however, we have no such lack of pleading. Appellees pleaded causes of action for securities and real estate fraud, violation of the DTPA, breach of contract and common law fraud. The case at bar is, therefore, distinguisable from *Hutton.* I think we must assume that the trial court here determined favorably to the judgment any omitted findings of fact and conclusions of law necessary to support the relief ordered by the judgment.

I disagree with the majority that estoppel forms the basis of the trial court's judgment. I also disagree that conclusion of law number two is grounded solely upon the court's determination (set out explicitly in finding of fact number six) that appellants had induced appellees not to file their suit in time to avoid the bar of limitations being raised against it. The trial court found specifically that the defendants failed to disclose to plaintiffs that others held title to the two leases and that the plaintiffs would not have entered this transaction had this information been disclosed. Finding of Fact No. 4. Further, the trial court found that plaintiffs were never told by defendants, did not know, and could not reasonably have known about the existence of the Lear Exploration Agreement and the verbal farmout agreement with one Lambert Hollub. The appellees argue correctly that the appellants should be estopped from asserting limitations because of these failures to disclose, even up to the time of filing suit. At trial, appellant Leonard admitted he held no own-

ership interest in the Corsicana Bank lease when he entered into the agreement with the appellees. Leonard attempted to maintain that he held some character of control over the lease by virtue of an exploration agreement Leonard had with Lear Petroleum in 1975. Appellants may have become suspicious by 1978 or 1979 when assured by appellant that he had the right to make any assignments under the unrecorded agreement, but actually had no way of knowing or ascertaining the veracity of the facts originally represented to them by Leonard.

Finally, the trial court's Conclusion No. 2, in which it held that defendants are estopped from asserting limitations regarding the failures to disclose and the later representations indicates that the trial court based its conclusion on *both* failure to disclose originally, as well as subsequent statements made by appellant to soothe and assure appellees. Appellees argued that Leonard's credibility at trial was brought into serious question, and the the trial judge had ample reason to disbelieve appellant entirely.

A case closely in point is *Sherman Foundry v. Mechanics, Inc.,* 517 S.W.2d 319 (Tex.Civ.App.1974, writ dism'd), in which the court held that where implied findings are necessarily referrable to an express finding and are supported by the evidence, they are properly considered by the Court of Appeals in support of the judgment.

Finally, the trial judge as the fact finder is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. I should not want to substitute my judgment here when the express and implied fact findings and conclusions clearly support the judgment entered by the trial court.

I would affirm the judgment.