RENDON V. ROMAN CATHOLIC DIOCESE

NO. 07-01-0125-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 14, 2001

______________________________

DARIO RENDON, Jr., JUAN RENDON, RUDY RENDON, 

DANIEL RENDON, and RODNEY RENDON,

Appellants

v.

ROMAN CATHOLIC DIOCESE OF AMARILLO, MOST REVEREND LEROY T. MATTHIESEN, HIS PREDECESSORS AND SUCCESSORS, AS BISHOP OF THE ROMAN CATHOLIC DIOCESE OF AMARILLO; ROMAN CATHOLIC DIOCESE OF LUBBOCK; MOST REVEREND PLACIDO RODRIGUEZ, HIS PREDECESSORS AND SUCCESSORS, AS BISHOP OF THE ROMAN CATHOLIC DIOCESE OF LUBBOCK, AND ARCHBISHOP MICHAEL J. SHEEHAN, PRESENTLY ARCHBISHOP OF THE DIOCESE OF SANTA FE, NEW MEXICO, AND FORMERLY THE BISHOP OF THE ROMAN CATHOLIC DIOCESE OF LUBBOCK

Appellees

_________________________________________________

FROM THE 286th DISTRICT COURT OF HOCKLEY COUNTY;

NO. 95-06-16181A; HON. ANDY KUPPER, PRESIDING

_______________________________

BEFORE, BOYD, C.J., QUINN, AND REAVIS, J.J.

Dario Rendon, Jr., Juan Rendon, Rudy Rendon, Daniel Rendon, and Rodney Rendon (the Rendon children) appeal from a final summary judgment granted in favor of the Roman Catholic Diocese of Amarillo, the Roman Catholic Diocese of Lubbock, Most Reverend Leroy T. Matthiesen, Bishop of the Roman Catholic Diocese of Amarillo and his predecessors and successors, Most Reverend Placido Rodriquez, Bishop of the Roman Catholic Diocese of Lubbock, and his predecessors and successors, and Michael J. Sheehan, Archbishop of the Diocese of Santa Fe, New Mexico and formerly the Bishop of the Roman Catholic Diocese of Lubbock (collectively referred to as the Church).  They contend, through four issues, that the trial court erred in granting the judgment.  We disagree and affirm same.

Background

The dispute concerns the sexual assault of Father Howell, a Roman Catholic priest, upon the Rendon children, who were minors and Catholic parishioners at the time.  According to the summary judgment evidence, the assaults occurred in the late 1970's and early 1980's.  In the Fall of 1986, the father of the boys, Dario Rendon Sr.,(Rendon Sr.) informed Bishop Sheehan, then bishop of the Roman Catholic Diocese of Lubbock, of the acts.  Bishop Sheehan informed Rendon Sr. that he would “take action to take care of the matter.”  The record does not disclose whether the two individuals ever broached the topic again.  However, in 1995, suit was filed against the Church and the estate of Father Howell because they believed that Bishop Sheehan failed to “take action” as represented.  The Church moved for summary judgment, alleging, among other things, that limitations had long since passed.  The trial court granted the motion without specifying the particular ground upon which it acted.
(footnote: 1) 

Standard of Review

The standard by which we review summary judgments is well-known and need not be repeated.  Instead, we simply refer the parties to Rule 166a of the Texas Rules of Civil Procedure, 
Science Spectrum, Inc. v. Martinez
, 941 S.W.2d 910 (Tex. 1997) and 
Nixon v. Mr. Property Management Co. Inc
., 690 S.W.2d 546 (Tex. 1985) (involving the standard generally applicable to summary judgments).

Limitations — Estoppel

The Rendon children did not dispute that limitations would have run on each of their causes of action unless their claims were preserved through some theory of law.   The theory asserted below and urged on appeal is estoppel.  Simply put, they contend that misrepresentations uttered by Bishop Sheehan, while Bishop of the Lubbock Diocese,  induced them to forego suit.  Those misrepresentations consisted of the Bishop supposedly informing Rendon, Sr. that “the Church would take care of the Boys, protect the other children from Father Howell, and that legal action would be unnecessary.”  None of the affidavits executed by the Rendon children and tendered to the trial court as summary judgment evidence illustrate that the Rendon children heard the purported misrepresentations said to their father or that they were present when the utterances were made.  Furthermore, that portion of the Rendon Sr. affidavit supposedly evincing the misrepresentations consists of the italicized passages in the following quotation:

In the fall of 1986, I [Rendon Sr.] discussed with Bishop Sheehan the revelations that Father Rodney Howell had sexually abused some of my sons while he served as a servant of the Diocese of Amarillo, under the direction of Bishop Matthiesen, and the Diocese of Lubbock.   
He told me that he would take action to take care of the matter.  
Because I trusted the Roman Catholic Church and its Bishops, I believed that Bishop Sheehan would take the necessary actions and that no legal action on my part would be necessary.

(Emphasis added).  

It is beyond dispute that estoppel may be invoked to defeat a claim of limitations.  Furthermore, it may be invoked in two ways.  For instance, a potential defendant’s concealment of facts from a plaintiff which facts are necessary for the plaintiff to know to pursue a cause of action may prove fatal to the defense of limitations.  
Leonard v. Eskew
, 731 S.W.2d 124, 128 (Tex. App.--Austin 1987, writ ref’d. n.r.e.).  So too may one defeat a limitations defense by establishing that the defendant engaged in conduct that induced the plaintiff to forego a timely suit regarding a cause of action that the plaintiff knew existed.  
Id.
   It is the latter means which the Rendon children pursued at bar.  That is, they assert that Bishop Sheehan induced them to delay suit.  That being the tact pursued, to succeed, the Rendon children must have presented some evidence illustrating that those sued utilized words or conduct to induce them into delaying suit beyond the time permitted by statute, unmixed with any want of diligence on their part.  
Palais Royal, Inc. v. Gunnells
, 976 S.W.2d 837, 849 (Tex. App.--Houston [1st Dist.] 1998, pet. dism’d. by agr.); 
Leonard v. Eskew
, 731 S.W.2d at 129.   Implicit in this test are the requirements that the plaintiffs knew they had a cause of action, that the cause of action had accrued at the time the inducement occurred, and that their initial and continued reliance upon the original inducement was reasonable.  
Leonard v. Eskew
, 731 S.W.2d at 129
.
  As explained in 
Leonard
, a plaintiff must not have “‘blindly relied upon a situation as being what it seemed rather than as being what it in reality was.’”  
Id.
, 
quoting
, 
Neal v. Pickett
, 280 S.W. 748 (Tex. Comm. App. 1926, jdgmt adopted).  Moreover, the conduct or words undertaken by the prospective defendant must “amount[] to an affirmative inducement to delay bringing the action.”  
Ladd v. Knowles
, 505 S.W.2d 662, 669 (Tex. App.--Amarillo 1974, writ ref’d. n.r.e.). 

In applying the foregoing law to the summary judgment at bar, we turn to the affidavit executed by Rendon Sr. wherein the latter allegedly reiterates the words of Bishop Sheehan.  Upon doing so, we immediately see that 
Bishop Sheehan
 said nothing about the Church “protect[ing] the other children from Father Howell, and that legal action would be unnecessary.”   In suggesting otherwise, the Rendon children were mistaken.  Rather, it is Rendon Sr. who says that he (Rendon Sr.) “believed that Bishop Sheehan would take the necessary actions and that no legal action on my part would be necessary.”  More importantly, all that Bishop Sheehan uttered, according to the affidavit was that he (the bishop) “would take action to take care of the matter.”  

The nature of the action that Bishop Sheehan purportedly intended to take went unmentioned.   Similarly unmentioned is any statement suggesting, much less illustrating, that the two discussed the possibility of the Rendons initiating suit against anyone or that the “legal action” which Rendon Sr. concluded was unnecessary involved a civil suit or a criminal complaint.  Nor did Rendon Sr. state that he informed Bishop Sheehan that he thought the Rendon children or any other member of the Rendon family sought or needed redress of any kind because of the alleged assault.  
Again, Rendon Sr. simply stated that he revealed to the bishop that Father Howell had sexually abused some of the Rendon children.  

Again, we required, in 
Ladd
, that the conduct or words allegedly heard by the plaintiff evince “affirmative inducement to delay bringing [an] action.”
  Without evidence that anything more than the mere disclosure of criminal conduct occurred between Rendon Sr. and Bishop Sheehan, without reference to a discussion about a claim, suit, redress or compensation of any kind, we lack sufficient evidentiary foundation from which to reasonably infer that a promise to “take action” comprised inducement to delay initiation of a 
civil suit
.  
See Roth v. FFP Operating Partners
, 994 S.W.2d 190, 197 (Tex. App.–Amarillo 1999, pet. denied
) (stating that a vital fact may not be deduced by inferring from inferences).  To paraphrase 
Leonard
 and 
Neal
, we must view the evidence not “‘as being what it seemed rather than as being what it in reality was.’” Here, in reality, the record fell short of containing any evidence illustrating the presence of each element of estoppel.  Accordingly, at least one viable ground for summary judgment appears of record and prevents us from holding that the trial court erred.

We affirm the summary judgment executed below.

Brian Quinn

    Justice

Publish.

ere is no evidence supporting an essential element of a claim or defense on which the opposing party has the burden of proof.  Because a no-evidence summary judgment is essentially the same as a pretrial directed verdict, we apply the same legal sufficiency standard to both.  
King Ranch, Inc. v. Chapman,
 46 Tex.Sup.Ct.J. 1093 (2003).  The proper inquiry is whether the non-movant produced any probative evidence to raise a material fact issue.  There is no evidence when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  
Id.
 If the non-movant presents more than a scintilla of probative evidence to raise a genuine material fact issue, summary judgment should not have been granted.  
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists when the evidence rises to a level such that reasonable and fair-minded people could differ in their conclusions.  
Id.
 

COMMON LAW MALICIOUS PROSECUTION

We begin with appellant’s second issue, which assigns error to the trial court’s finding that Elrod and Fletcher were entitled to summary judgment on her claims for malicious prosecution.   The parties agree that the opinion in 
Richey v. Brookshire Grocery Co.
, 952 S.W.2d 515 (Tex. 1997), correctly sets out the elements of a claim for malicious prosecution. The elements are: the initiation of a criminal prosecution against the plaintiff; by the actions of the defendant; termination of that prosecution in the plaintiff’s favor; the plaintiff’s innocence; the absence of probable cause for the prosecution; malice in initiating the prosecution; and damage to the plaintiff.  
Id.
 at 517.  Elrod and Fletcher’s no-evidence motions for summary judgment asserted there is no evidence on the elements of lack of probable cause and malice.

In 
Richey
, the court reaffirmed the definition of probable cause in the malicious prosecution context as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted."   
Id.
 at 517 (quoting from 
Akin v. Dahl
, 661 S.W.2d 917, 921 (Tex. 1983)).   Restated, the probable-cause determination asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be.   
Id.

Malice is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others.  
King v. Graham
, 47 S.W.3d 595, 608 (Tex.App.--San Antonio 2001, no pet.).  It may be established by direct or circumstantial evidence.   
Thrift v. Hubbard
, 974 S.W.2d 70, 80 (Tex.App.--San Antonio 1998, pet. denied).  Appellant cites 
Bass v. Metzger
, 569 S.W.2d 917 (Tex.Civ.App.–Corpus Christi 1978, writ ref’d n.r.e.), for the proposition that malice can be inferred from the initiation of a prosecution without probable cause.  
See also King
, 47 S.W.3d at 608.  Fletcher and Elrod counter that 
Biering v. First National Bank
, 7 S.W. 90 (Tex. 1888), held the “two elements are distinct.”  In 
Biering
, the court actually held that lack of probable cause could not be inferred from proof of malice, 
Id.
 at 92, but noted that malice 
may
 be inferred from proof that there was no probable cause.  
Id.
  

With respect to probable cause, a malicious prosecution case begins with the presumption that the defendant has acted reasonably and in good faith and had probable cause to initiate the prosecution. 
Richey
, 952 S.W.2d at 517; 
Akin
, 661 S.W.2d at 920. The plaintiff’s initial burden on that element is to produce evidence that “the motives, grounds, beliefs, and other evidence” on which the defendant acted did not constitute probable cause. 
Id
.  Faced with Fletcher and Elrod’s no-evidence motion for summary judgment on the absence of probable cause element, then, appellant was required to point out evidence to rebut that initial presumption. Significantly, although appellant argues the general proposition that probable cause was lacking for her prosecution pursuant to the two complaints, she does not expressly assert that Fletcher or Elrod did not act on the basis of the flyer Fletcher found on his windshield, nor does she expressly challenge the sufficiency of the flyer to constitute probable cause for either complaint.
(footnote: 1)  

 With regard to the prosecution for distributing or scattering handbills, appellant argues that the complaint was not based on eyewitness evidence that she placed the flyers on cars.  However she does not explain, nor does it appear to us, how the absence of an eyewitness is evidence of the lack of probable cause.  Having carefully examined the summary judgment record, we find no evidence to support this element of appellant’s claims for malicious prosecution arising from the handbill prosecution.

With regard to the prosecution for the zoning violation, appellant relies on a portion of Elrod’s deposition testimony as evidence that the prosecution was brought without probable cause.  The deposition testimony at issue consists of the following passage:

Question: Did you ever obtain a search warrant at any time to go to the Gunnels’ home after you filed that complaint?

Elrod: In incidents like this, it’s kind of hard to obtain a search warrant.

Question: Why is that, sir?

Elrod: Because you don’t know what is in there and you don’t have proof of what is in there, totally.  All you’ve got is guessing and suspicious [sic]. And the flier that she put out led to suspicious [sic] that there was, and that’s not grounds for – my understanding, is not grounds for a search warrant.

The gist of appellant’s argument is that Elrod’s statement is an admission he had only a suspicion that appellant had violated the zoning ordinance and therefore did not have probable cause to file the complaint alleging she did so.

We cannot agree that Elrod’s response to the question why it’s hard “in incidents like this” to obtain a search warrant amounts to such an admission, nor do we see his statement as evidence of the absence of probable cause. To begin with, the first question in the quoted exchange inquired of Elrod  whether he had obtained a search warrant after he filed the complaint. Events occurring after Elrod filed the complaint are not relevant to the issue of his probable cause to initiate the prosecution of appellant. 
Akin
, 661 S.W.2d at 920 (“It is the events prior to the institution of the proceedings which must be examined, and only those events, to determine if the defendants had probable cause to act.”)

Assuming, though, we can infer that Elrod’s response to the second question reflects his beliefs about the availability of a search warrant at the time he filed the complaint, we still cannot give his statement the significance appellant attributes to it. In its context, Elrod’s statement, reflecting his legal conclusion that he would not have been able to obtain a search warrant because it would have been based on “guessing and suspicions,” would not lead a fair-minded person to conclude either that he subjectively did not believe appellant was operating a flower shop in violation of the ordinance or that his belief was not objectively reasonable.  
See Richey
, 952 S.W.2d at 518-19. His response to the question does not, as appellant urges, amount to an admission by Elrod that he had only a suspicion appellant was operating a flower shop in her home, and even viewed in the light most favorable to appellant, it represents no more than a scintilla of evidence that probable cause was lacking. 

Appellant also emphasizes what she sees as a contradiction between Elrod’s testimony on deposition that he performed no investigation before making the determination that appellant was operating a business in violation of the zoning ordinance and his statement in his affidavit that he “confirmed by his own investigative efforts” that appellant  occupied the single-family residence at 1415 East Broadway. Again, though, in context, the contradiction fades. At deposition, Elrod was asked, “Did you go out and do any investigation before you made [the determination that appellant was violating the ordinance]?”  After his negative response, he was asked, “No phone calls, no physical drive-bys, call, talk to her, or anything?” He again gave a negative response. The responses do not contradict Elrod’s statement in his affidavit. The differences between the responses and the affidavit do not raise a genuine issue of material fact concerning the presence of probable cause. 

Appellant has further asserted that there are such inconsistencies and conflicts between the evidence given by Elrod and that given by Fletcher, and between the statements made by each in his deposition testimony and those contained in his affidavit as to raise a fact issue concerning the lack of probable cause. Having reviewed the deposition testimony that was before the trial court and the affidavits of both defendants, we do not find inconsistencies or conflicts in the summary judgment evidence sufficient to raise a genuine issue of material fact concerning the probable cause element. 

Appellant’s only argument addressing summary judgment for Fletcher on the lack of probable cause element appears to be that Fletcher did not conduct any investigation beyond the flyer itself.  We cannot agree that is evidence he lacked probable cause. Again, appellant does not contend that the information in the flyer was insufficient to meet the standard for probable cause set out in case law. 

Because the summary judgment record supports a finding that there is no evidence supporting an essential element of appellant’s claims for malicious prosecution, that of the absence of probable cause for the prosecution, the trial court did not err in granting Fletcher and Elrod summary judgment on those claims.  Tex.R.Civ.Proc. 166a(i) (summary judgment is proper when there is no evidence of “one or more essential elements.”) We overrule appellant’s second issue.

SECTION 1983 CLAIMS

We turn next to appellant’s third issue, in which she asserts that the trial court’s grant of summary judgment on her claims for deprivation of civil rights asserted under Section 1983 was error. Those claims, asserted against the City, Elrod and Fletcher, contended that pursuit of the two charges against her constituted both malicious prosecution in violation of her Fourth Amendment rights and selective prosecution in violation of her right to equal protection of the law under the Fourteenth Amendment.
(footnote: 2)
 Section 1983 provides a civil cause of action against any person acting under color of state law who deprives another of a right protected by the federal constitution or laws.  The U. S. Supreme Court has held that a municipality is a “person” under the statute, but its liability must be based on its own conduct, and cannot be vicarious arising from conduct of its employees.  
Monell v. Dept. of Social Servs
., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Municipal liability for deprivations of constitutional rights must flow from an established policy or custom of the municipality.  
Leatherman v. Tarrant Co. Narcotics Intelligence Unit
, 507 U.S. 163, 166, 122 L.Ed.2d 517, 113 S.Ct. 1160 (1993). 

Appellant does not allege that her prosecution was pursuant to a formal policy of the City.  An official policy for which a municipality may be liable need not be a formally adopted one.  Official policy can also be established by evidence of: 

A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Johnson v. Moore
, 958 F.2d 92, 94 (5
th
 Cir. 1992).  

The official policy appellant seeks to establish was that the city attorney would try all cases filed in municipal court regardless of the merits of the case.  As evidence of this policy, she cites the deposition testimony of the city attorney, William McGowan, that he did not consider dismissing the complaints against appellant, even after one trial resulted in a hung jury, and his testimony that he tried all cases, “win, lose or draw.”  

Appellant characterizes this testimony as evidence that the city attorney tries all cases “regardless of his chances of success.” Based on this characterization of McGowan’s testimony, and the statutory provision that it is the duty of prosecutors, “not to convict, but to see that justice is done,” Tex.Code Crim.Proc. Art. 2.01 (Vernon Supp. 2003), appellant argues this is evidence of “the type of ‘serious incompetence’”
(footnote: 3) for which the remedy created by Section 1983 was established.  

Although appellant points to no evidence that the governing body of the City of Brownfield, or any official to whom the City had delegated policy-making authority, had knowledge of the city attorney’s policy, nor to any evidence that the City’s governing body had delegated policy-making authority to the city attorney, for purposes of this discussion we will assume here, 
arguendo
, that the city attorney is the type of policy-maker whose decisions and practices with respect to trial of cases in municipal court can be said to be the actions of the City of Brownfield. 
See Pembaur v. City of Cincinnati
, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Appellant asserts that, by virtue of the city attorney’s long tenure, the practice of trying all cases was so persistent and widespread as to fairly represent municipal policy. Appellant states in her brief that the city attorney has maintained the policy “for his entire tenure of over twenty years.” Although we see no evidence in the record before us to support the statement,
(footnote: 4) again, for purposes of this discussion we will assume, 
arguendo,
 that there is summary judgment evidence of a policy of the City to prosecute all municipal court cases to trial. 

Even assuming the existence of such a policy, however, it did not give rise to a violation of appellant’s constitutional rights.  To the degree that appellant contends that the city attorney’s testimony is evidence that she was prosecuted maliciously, the contention must fail. “Malicious prosecution can be a constitutional violation . . . only if all its common law elements are established.” 
Castellano v. Fragozo
, 311 F.3d 689, 698-99 (5
th
 Cir. 2002), citing 
Izen
, 256 F.3d at 327
.  The elements of the constitutional tort of malicious prosecution under Section 1983 are the same as those under state law.  To establish her malicious prosecution claim against the City under Section 1983, therefore, appellant must establish the same elements as are required for her malicious prosecution claims against Elrod and Fletcher under Texas law. 
Castellano
, 311 F.3d at 699
.  We previously have concluded that appellant has pointed out no evidence that Elrod and Fletcher lacked probable cause for their initiation of appellant’s prosecution. Nor is the city attorney’s policy evidence of a lack of probable cause for appellant’s prosecution. 

Appellant asserts that the City policy was to try all municipal court cases filed “despite the merits of the particular case.” She further describes the practice as one of prosecuting all cases to trial “regardless of the facts or lack of probable cause,” in violation of the prosecutor’s duty under the Code of Criminal Procedure.  But the city attorney did not testify that he tried cases in which the facts did not support prosecution or in which probable cause was lacking. Nor does appellant cite us to other summary judgment evidence supporting such a conclusion. We are not pointed to evidence of the nature or number of other cases the city attorney has taken to trial, the evidence presented in such cases, or their outcomes. On this record, the city attorney’s testimony falls considerably short of evidence of a City custom, practice or policy of prosecuting municipal court cases without probable cause. 

Because, as noted, appellant was required to establish the same elements for her Section 1983 malicious prosecution claims against Elrod and Fletcher as for her common-law malicious prosecution claims against them, 
Castellano
, 311 F.3d at 699, our conclusion that appellant has pointed out no evidence of the lack of probable cause for her prosecution disposes of her Section 1983 claims against them as well. 
Richey
, 952 S.W. 2d at 517. The trial court’s grant of summary judgment on appellant’s Section 1983 malicious prosecution claims was not error.

Appellant focuses her Section 1983 claims alleging deprivation of equal protection of the law through selective prosecution on the actions of Fletcher and Elrod. As with any equal protection claim, to succeed appellant must demonstrate first that she and another person or class were similarly situated,
(footnote: 5) and secondly, that she was treated differently.  
Beeler v. Rounsavall
, 328 F.3d 813 (5
th
 Cir. 2003).

With regard to the handbill prosecution, appellant argues she is similarly situated to businesses that had advertised with flyers placed on cars.  The summary judgment record contains evidence that three retail businesses had engaged in such advertising, but each had been warned that the practice violated a city ordinance rather than being prosecuted.  Fletcher and Elrod seek to distinguish those instances on the basis that those businesses were located in commercially zoned districts.  This distinction may be relevant in considering whether there was a basis for disparate treatment but, because the ordinance does not recognize this distinction, we find there is summary judgment evidence that appellant and the other three businesses were similarly situated under the ordinance. 

With regard to the zoning prosecution, appellant contends she is similarly situated to city residents who conduct garage sales in a residential district, and others who conduct businesses from their homes, including Fletcher and Elrod.  She argues that her sales were indistinguishable from garage sales because both are periodic or irregular rather than continuous.  However, she does not identify any summary judgment evidence supporting the assertion that her sales were not continuous.  The only relevant evidence appears to be the limited period for which the prices on the flyer were valid and the language of the flyer referring to the annual school homecoming event. Indulging reasonable inferences in her favor, we cannot say, though, that there is no evidence appellant’s activities were similar to garage sales.  

The evidence of business conducted in Fletcher’s home was that his wife had baked and sold cakes.  Fletcher points to evidence that this business activity involved only a few sales, none of them in recent years. There was also evidence that Elrod sells ammunition reloaded in his home.  He relies on evidence that the ammunition was not sold at the house and he did not advertise.  Finally, there was also summary judgment evidence that Elrod’s wife and daughters operated a “radio telephone answering service” from their  home.  Appellees’ brief does not offer any distinction between that activity and appellant’s.  Again, indulging reasonable inferences in her favor, the summary judgment evidence does not conclusively establish that appellant was not similarly situated to others who conducted commercial activities in residential districts. There is no evidence of other municipal court prosecutions under the zoning ordinance.  

The mere failure to prosecute others similarly situated, though, is not sufficient to show selective prosecution violative of equal protection. 
  U.S. v. Greene, 
697 F.2d 1229, 1234 (5
th
 Cir. 1983),
 cert. denied, 
463 U.S. 1210 (1983)
;  Roise v. State
, 7 S.W.3d 225, 243 (Tex.App.--Austin 1999, pet. ref’d).  To establish her claim of selective prosecution, appellant must further establish that her different treatment was invidious, that is, motivated by improper considerations such as race, religion, the interference with exercise of a constitutional right, or other arbitrary classification.  
Beeler, 
328 F.3d at 817
, see also Oyler v. Boles, 
368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)
; Greene, 
697 F.2d at 1234. 
To avoid summary judgment appellant must show a genuine question of fact on whether Elrod and Fletcher’s decision to prosecute was deliberately based on such an unjustifiable standard. 
See Oyler
, 368 U.S. at 456 (selective enforcement violative of equal protection is that “deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification.”)  

We disagree with Fletcher and Elrod’s contention that appellant must show the decision to prosecute was based on race, religion, or exercise of constitutional rights. That contention is based on a statement in 
Greene
, 697 F.2d at 1234, listing those as impermissible considerations in the decision to prosecute.  However those factors are not exclusive. As noted, in 
Beeler
 the Fifth Circuit recognized a claim of selective prosecution can be based on an “arbitrary classification.”  328 F.3d at 817.  
See also, e.g., Hayden v. Grayson
, 134 F.3d 449, 453 n.3 (1
st
 Cir. 1998), citing  
Wayte v. United States
, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

But appellant fails to cite any evidence that the decision to prosecute her in either case was based on such an impermissible ground.  Her first amended petition alleged the prosecutions were motivated by the exercise of first amendment rights by her and her father. Appellant refers us to no evidence in the record supporting that pleading and she does not present that argument on appeal. Her assertions that others engaging in similar practices were not prosecuted and that others were let off with a warning are simply restatements of the argument that she has been treated differently. 

Taking appellant’s contention that she is the only person who has been prosecuted for violations of these ordinances as true for purposes of this summary judgment analysis, that fact may establish that appellant has been treated differently, but it is not evidence that she has been treated differently for an impermissible reason. Nor is the failure of Elrod and Fletcher to conduct any investigation beyond the flyer such evidence, nor is the presence of Elrod’s and Fletcher’s names among those who have not been prosecuted for commercial activity in residential areas. 

The record supports a finding that there is no summary judgment evidence that any differential treatment of appellant in enforcement of the city ordinances was invidious in that it arose from an arbitrary or otherwise impermissible classification. 
See Greene
, 697 F.2d at 1234. Because of the absence of any evidence on an indispensable element of appellant’s claims for selective prosecution, the trial court did not err in granting summary judgment for Fletcher and Elrod on those claims. 

Nor does the record contain evidence of a City policy giving rise to a claim that appellant was selectively prosecuted. As noted, the official policy on which appellant relies for her Section 1983 claims against the City is the city attorney’s policy of bringing to trial all municipal court cases presented to him for prosecution. Such a policy cannot form the basis for a selective prosecution claim against the City. The existence of such a policy obviously does not support a contention that the city attorney’s actions in taking appellant to trial on the complaints against her were “selective” or had the effect of treating her differently than others similarly situated. To the contrary, if the city attorney’s testimony represents City policy, appellant was treated like others who were cited by complaint. Moreover, appellant points to no evidence that any action taken pursuant to the city attorney’s policy was taken because of an arbitrary or otherwise impermissible classification of her. We find the trial court properly granted summary judgment for the City of Brownfield on appellant’s selective prosecution claims against it. 

Having concluded that the trial court did not err in granting summary judgment on appellant’s Section 1983 claims against appellees, we overrule appellant’s third issue.  

CONCLUSION

Our dispositions of appellant’s second and third issues are dispositive of her claims against appellees. Except to the degree that we have considered and rejected appellant’s assertions that the affidavits of Elrod and Fletcher created material questions of fact, we need not address her first issue, nor need we address her fourth issue challenging appellees’ entitlement to summary judgment on the basis of immunity.  The judgment of the trial court is affirmed.

James T. Campbell

       Justice

FOOTNOTES
1:
The trial court severed the allegations against the Church from those levied against the Estate of Father Howell.

1:
2:
3:
4:
5: