TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00506-CV





In the Interest of R. O.






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
NO. 196,516-A, HONORABLE ROBERT DOHONEY, JUDGE PRESIDING


 
M E M O R A N D U M O P I N I O N


                        In this appeal, Nora O’Neill, R. O.’s mother,


 seeks reversal of the summary judgment
granted to Manuel Alcozer in a paternity suit. O’Neill brings two points of error, alleging that the
trial court erred in granting judgment for Alcozer because he did not conclusively prove that R. O.’s
maternal grandmother, Lydia Alaniz, lacked standing to bring suit,


 and because Alcozer was
estopped from asserting the statute of limitations defense. We conclude that Alcozer demonstrated
his entitlement to summary judgment as a matter of law, and that O’Neill did not produce evidence
that raised a genuine issue of material fact. Accordingly, we affirm the summary judgment.


BACKGROUND

                        Nora O’Neill and Manuel Alcozer had an extramarital affair from 1994 until 1998. 
O’Neill gave birth to R. O. on November 18, 1998, while married to Daniel O’Neill. During the
probable time of conception, O’Neill had sexual intercourse with her husband. Also within that
time, O’Neill had sexual intercourse with Alcozer, who was married to another person. O’Neill did
not tell her husband about the affair or that she doubted his paternity until 2001. Neither potential
father took a paternity test, but Daniel O’Neill openly treated R. O. as his child by participating in
R. O.’s prenatal activity, attending R. O.’s birth, being identified as R. O.’s father on her birth
certificate and in a newspaper birth announcement, residing in the same household with R. O. since
her birth, and treating R. O. and his other child equally.
                        In November 2001, after learning that Alcozer and his wife were expecting a child, 
O’Neill wrote to Alcozer, who is a lawyer, explaining her “hurt and resentment” stemming from his
“not acknowledging [their] child.” She asked him to pay exactly one dollar per week until R. O.’s
eighteenth birthday into an account she had opened for R. O. and said that, if he paid any more than
one dollar, she would mail the difference to his home address. She told Alcozer that the agreement
would remain between them unless he chose not to comply with the arrangement. She also
instructed him to make the first deposit during the week of R. O.’s birthday, November 18th. After
receiving this letter, Alcozer began making weekly deposits.
                        On March 27, 2002, O’Neill wrote another letter to Alcozer, stating that she had
“done some research regarding child support.” She said she had “consulted a local well-respected
attorney” who understood “all the circumstances regarding [the] situation,” and that he had advised
her that R. O. was entitled to “a little over 14% of [Alcozer’s] net income as well as health
insurance.” Although she was unaware of Alcozer’s exact income, she estimated that R. O. would
be entitled to $10,000 a year. She told Alcozer that he could pay the amount in one lump sum each
year by April 15th, or he could pay $833 each month until R. O.’s 18th birthday. She continued: 
“I will get back to you at the end of each year regarding the health insurance amount. I expect that
the $1 will still be put in her account as per prior agreement. I think you understand that this
agreement is between you and me. No one else needs to be involved.” In her deposition, O’Neill
testified that her attorney asked her whether she “had entertained the idea” of a lawsuit, but that she
had told him “[she] did not want to do that.” Alcozer made six or seven of the additional $833
payments. O’Neill testified that Alcozer did not offer to pay her money if she would not file suit
against him.
                        Sometime after her March letter, but before May 18, 2002, O’Neill wrote to Alcozer
again, stating that she wanted him to figure a payment plan for his 40 months of past due child
support and health insurance premiums, which according to her calculations, totaled $35,720. She
asked Alcozer to “get back with [her] by May 18, 2002” concerning a payment plan.
                        Alcozer made a last payment to O’Neill on October 15, 2002. O’Neill testified that
Alcozer sent a message through a friend that he was no longer going to pay child support. She said
that Alcozer brought up the subject of the statute of limitations. O’Neill called her attorney, who
advised her that she had four years from the date of the child’s birth to file a parentage suit, if the
child had a presumed father. O’Neill testified that she made an unannounced visit to the Alcozers’
home in January 2003, where she revealed Alcozer’s infidelity to his wife and told her that R. O. was
Alcozer’s child. O’Neill also revealed the payments Alcozer had made.
                        On February 19, 2003, Lydia Alaniz, R. O.’s maternal grandmother, filed suit as
R. O.’s next friend, seeking to establish R. O.’s paternity. Nora and Daniel O’Neill later joined
Alaniz’s suit. Alcozer answered and filed a plea to the jurisdiction, a motion to dismiss, a plea in
abatement, and special exceptions. He subsequently sought a summary judgment under Texas Rules
of Civil Procedure 166a(c) and 166a(i), based on Alaniz’s lack of standing to bring suit, expiration
of the limitations period for a parentage action involving a child with a presumed father,
inapplicability of estoppel, and absence of fraudulent concealment. After a hearing, the trial court
granted summary judgment in favor of Alcozer without stating the grounds for its ruling.


ANALYSIS

Standard of Review
                        We review the trial court’s grant of summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). When summary judgment is sought on the
ground of limitations, the movant, in this case Alcozer, has the burden to conclusively establish the
applicability of his affirmative defense. See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d
211, 220 (Tex. 2004). By advancing his motion for judgment under Rule 166a(i), Alcozer asserts
that there is no evidence of one or more essential elements of a claim or defense that O’Neill would
have the burden to prove at trial. See Tex. R. Civ. P. 166a(i). To defeat this motion, O’Neill must
produce evidence that raises a genuine issue of material fact on the elements Alcozer has challenged.
See id. A genuine issue of material fact exists if more than a scintilla of evidence establishing the
existence of the challenged element is produced. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004). If O’Neill fails to produce more than a scintilla of evidence to meet the “no-evidence”
burden, then there is no need to analyze whether Alcozer’s proof satisfied the Rule 166a(c) burden.


 
See id.
                        In determining whether more than a scintilla of evidence has been produced in
response to a Rule 166a(i) motion for summary judgment, the evidence must be viewed in the light
most favorable to O’Neill, the nonmovant. See id. at 601. More than a scintilla of evidence exists
if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions. Id. Conversely, when evidence offered to prove a vital fact is so weak as to do no more
than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal
effect, is no evidence. Id.
                        Because the trial court’s order does not specify the grounds for its summary judgment,
we must affirm the summary judgment if any of the theories presented to the trial court and
preserved for appellate review are meritorious. Knott, 128 S.W.3d at 217.

 
 

Statute of Limitations for Paternity Actions Involving a Presumed Father
                        A man is presumed to be the father of a child if he is married to the mother of the
child and the child is born during the marriage. Tex. Fam. Code Ann. § 160.204(a)(1) (West Supp.
2004-05).


 A suit to adjudicate the parentage of a child who has a presumed father must be filed
before the child’s fourth birthday:

 
(a)   Except as otherwise provided by Subsection (b), a proceeding brought by a
presumed father, the mother, or another individual to adjudicate the parentage
of a child having a presumed father shall be commenced not later than the fourth
anniversary of the date of the birth of the child.
 
(b)  A proceeding seeking to disprove the father-child relationship between a child
and the child’s presumed father may be maintained at any time if the court
determines that:
 
(1)  the presumed father and the mother of the child did not live together or
engage in sexual intercourse with each other during the probable time of
conception; and
 
(2)  the presumed father never openly treated the child as his own.



 
 
Id. § 160.607 (West 2002).
                        Daniel O’Neill is R. O.’s presumed father because he was married to Nora O’Neill
when R. O. was born on November 18, 1998. See id. § 160.204(a)(1). The trial court did not
determine that an exception to the four-year limitations should apply. See id. § 160.607(b). Nora
O’Neill testified that she and Daniel O’Neill were married, living together, and having sexual
intercourse during the spring of 1998, the probable time of R. O.’s conception. These facts negate
the first half of the exception, which exempts a claim from limitations if the presumed father and the
mother of the child did not live together or engage in sexual intercourse with each other during the
probable time of conception. Id. § 160.607(b)(1).
                        Similarly, O’Neill’s testimony negates the second half of the exception, which
exempts a claim from the limitations period if the presumed father never openly treated the child as
his own. Id. § 160.607(b)(2). O’Neill testified that she put her husband’s name on R. O.’s birth
certificate, R. O.’s published birth announcement identified Daniel O’Neill as R. O.’s father, Daniel
O’Neill has raised R. O. just as if she were his own child, and he has continued to treat R. O. and
their other child equally—even after she told him that she doubted his paternity. In response to a
request for admission, Alaniz confirmed that R. O. has lived with Daniel and Nora O’Neill since
birth. Daniel O’Neill testified that he participated in R. O.’s prenatal activity, he attended her birth,
he is identified as her father on her birth certificate, he attends church with her, and he regularly tells
her that he loves her. He further testified that he and R. O. have a close relationship and that he
treats her in all respects as his own.
                        Without an applicable exception under section 160.607(b)(2), the limitations period
for an adjudication of R. O.’s parentage expired on November 18, 2002, four years after R. O.’s
birth. See id. § 160.607. On February 19, 2003, Alaniz filed a petition to establish the parent-child
relationship. On April 25, 2003, Nora and Daniel O’Neill joined in the filing of Alaniz’s first
amended petition. Both petitions were filed after November 18, 2002, beyond the expiration of
limitations. See id. § 160.607(a).


Applicability of Texas Family Code Section 160.607 to a “Child”
                        O’Neill argues that the four-year limitations period is inapplicable to her suit on
behalf of R. O. because section 160.607(a) does not mention “child” in its description of who must
bring suit within four years. See id. (“a proceeding brought by a presumed father, the mother, or
another individual . . . .”). She asserts that the phrase “another individual” does not refer to R. O.
because the Uniform Parentage Act specifically uses the word “child” when discussing the child
involved in a paternity action. See generally id. §§ 160.001-.763 (West 2002 & Supp. 2004-05); City
Pub. Serv. Bd. v. Public Util. Comm’n, 96 S.W.3d 355, 359 (Tex. App.—Austin 2002, no pet.)
(express mention of one person, thing, consequence, or class is equivalent to express exclusion of
all others).
                        Alcozer responds that section 160.607(a) applies to R. O. because the Act defines a
“child” as “an individual of any age whose parentage may be determined under this chapter.” Tex.
Fam. Code Ann. § 160.102(3) (West 2002) (emphasis added). Based on this statutory definition, the
argument that the Texas Legislature did not consider a “child” to be an “individual” for the purposes
of section 160.607(a) is without merit. See id. §§ 160.102(3), 160.607(a).
                        The National Conference of Commissioners on Uniform State Laws revised the 
Uniform Parentage Act in 2000. Unif. Parentage Act § 607 (amended 2002), 9B U.L.A. 295 (Supp.
2004-05). The Commissioners established a two-year time limitation for rebutting the presumption
of paternity that arises when the mother and presumed father were cohabiting at the time of the
child’s conception, but if the mother did not live with the presumed father or engage in sexual
intercourse with him at the probable time of conception, there would not be any time limit for filing
a parentage suit. Id. The drafters made this distinction based on the belief that
 
a two-year period allows an adequate period to resolve the status of a child within the
context of an intact family unit; a longer period may have severe consequences for
the child in that circumstance. But if the family is not intact and the presumed father
neither cohabited with the mother at the time of conception nor treated the child as
his own, the nonpaternity of the presumed father is generally assumed by all the
parties as a practical matter. It is inappropriate to assume a presumption known by
those concerned to be untrue.
 
 
Id. § 607 cmt. The drafters stated that the presumption of paternity could be attacked during this
limited two-year period; thereafter the presumption was immune from attack. Id.
                        Texas’s version of the Uniform Act doubles the limitations period for an attack on
a presumption of parentage to four years. See Tex. Fam. Code Ann. § 160.607(a). This tracks the
time frame allowed for presentation of an equitable bill of review. See John J. Sampson, Legislative
Update: Family Law: The Top 10 Things That Happened in Family Law, 64 Tex. B. J. 764, 767
(2001). It also represents legislative balancing, affording those with an interest in the child a
sufficient length of time to assert their claims, while protecting the child from the turmoil of severing
an established parental relationship. O’Neill does not present any issue of material fact that allows
R. O.’s claim to circumvent application of the four-year statute of limitations. At oral argument,
O’Neill acknowledged that if a child is included within the coverage of section 160.607(a), and if
the doctrine of estoppel is inapplicable, her suit is time-barred.


Applicability of Equitable Estoppel

                        O’Neill argues that Alcozer is estopped from asserting the statute of limitations as
a defense to their suit. O’Neill’s intended application of estoppel is unusual, as it is typically used
to protect an established parent-child relationship, not to dismantle it:

Application of estoppel in paternity actions is aimed at achieving fairness as between
the parents by holding them, both mother and father, to their prior conduct regarding
the paternity of the child. Estoppel is based on the public policy that children should
be secure in knowing who their parents are. If a person has acted as the parent and
bonded with the child, the child should not be required to suffer the potentially
damaging trauma that may come from being told that the father she has known all her
life is not in fact her father. In determining whether the doctrine should be applied
to a particular case, the child’s best interests are of paramount concern. To that end,
the courts are more inclined to impose equitable estoppel to protect the status of a
child in an already recognized and operative parent-child relationship.
 
 
In re Shockley, 123 S.W.3d 642, 651-52 (Tex. App.—El Paso 2003, no pet.) (citations omitted).

                        The doctrine of equitable estoppel requires: (1) a false representation or concealment
of material facts; (2) made with actual or constructive knowledge of those facts; (3) with the
intention that it should be acted on; (4) to a party without knowledge or means of obtaining
knowledge of the facts; (5) who detrimentally relies on the representations. Johnson & Higgins, Inc.
v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998). O’Neill presents two theories for
the application of estoppel: that Alcozer’s payments to O’Neill induced her not to file suit before
the expiration of limitations arose; and that Alcozer and O’Neill were in a fiduciary or confidential
relationship, which required Alcozer to tell O’Neill that he only intended to pay money to her until
the statute of limitations expired.

Estoppel Based on Inducement to Forbear Suit

                        When a plaintiff is aware of facts giving rise to a cause of action but fails to file suit
within the limitations period because the defendant induced plaintiff not to sue, the defendant may
be precluded from asserting the limitations bar. Leonard v. Eskew, 731 S.W.2d 124, 129 (Tex.
App.—Austin 1987, writ ref’d n.r.e.). The essential elements of such estoppel are that the defendant,
by words or conduct, induced the plaintiff to delay filing a cause of action beyond the time permitted
by the applicable statute of limitations, and such inducement is unmixed with any lack of diligence
on the plaintiff’s part. Id. This means that a claimant must be diligent to file the cause of action she
knows she has; she may not continue to rely upon the defendant’s original inducement beyond a
point when it becomes unreasonable to do so. Id. One claiming estoppel “must not have ignored
the requirements of due care and blindly relied upon a situation as being what it seemed rather than
as being what it in reality was.” Id. (citing Neal v. Pickett, 280 S.W.2d 748, 753 (Tex. Comm’n
App. 1926, judgm’t adopted)).
                        In response to Alcozer’s no-evidence motion, O’Neill offered the three letters she
wrote to Alcozer, her affidavit, deposit slips, and bank account statements. This evidence does not
constitute proof that she was induced to forgo filing suit. First, O’Neill produced no evidence to
show that she was “without means of obtaining knowledge of the facts” about the statute of
limitations; rather, O’Neill’s letter of March 27, 2002, demonstrates that she sought and obtained
independent legal advice: “I am writing this letter so that you may understand that I have done some
research regarding child support. . . . I have consulted a local, well-respected attorney. I trust him
with the information that I gave him. He understands ALL the circumstances regarding this
situation.” (Emphasis in original.)
                        Second, although O’Neill’s affidavit claims that she trusted Alcozer to tell her about
the statute of limitations, her letter of March 27th shows that she was contemporaneously consulting
a lawyer about Alcozer’s future legal obligations to R. O. O’Neill’s evidence is inconsistent with
her assertion that she relied on Alcozer. Although Alcozer represented her mother’s business at one
time, none of O’Neill’s evidence shows that Alcozer and O’Neill had an attorney-client relationship
or that she relied upon him as an attorney.
                        Third, O’Neill’s assertion that Alcozer induced her not to sue is inconsistent with her
testimony that Alcozer did not offer to pay her money if she would not file suit against him. 
O’Neill’s evidence shows that all the money she received from Alcozer resulted from her letters
requesting money from him.
                        Fourth, O’Neill did not exercise due diligence in filing the suit she knew she had.
Over a year and a half passed between August 2001, when O’Neill told her husband that he was not
R. O.’s father, and November 2002, when the statute of limitations expired. Prior to the expiration
of limitations, O’Neill’s attorney specifically inquired whether she “had entertained the idea” of
filing a lawsuit; she responded that “[she] did not want to do that.” O’Neill eventually filed suit, five
months after the statute of limitations expired.
                        O’Neill’s proffered evidence on these challenged elements of estoppel did not rise
to a level that would enable reasonable and fair-minded people to differ in their conclusions. 
Summary judgment was proper on O’Neill’s claim of estoppel based on an inducement not to sue. 


Estoppel Based on Confidential Relationship
                        O’Neill also urges estoppel based on her alleged confidential relationship with
Alcozer, which imposed on him a duty to disclose the statute of limitations. There are two types of
fiduciary relationships, formal fiduciary relationships that arise as a matter of law—such as attorney-client, trustee-beneficiary, and principal-agent—and informal fiduciary relationships that may arise
from “confidential relationships,” where one person trusts in and relies upon another, whether the
relation is a moral, social, domestic or merely personal one. See Crim Truck & Tractor Co. v.
Navistar Int'l Transp. Corp., 823 S.W.2d 591, 593-94 (Tex. 1992); Thigpen v. Locke, 363 S.W.2d
247, 253 (Tex. 1962). One with a fiduciary duty is required to place the interest of another party
above his own. Chapman Children’s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 439 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). “Because not every relationship involving a high
degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law
recognizes the existence of confidential relationships in those cases in which influence has been
acquired and abused, in which confidence has been reposed and betrayed.” Crim Truck & Tractor,
823 S.W.2d at 594 (citing Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 507 (Tex. 1980)).
                        If not a recognized formal fiduciary relationship, the existence of the fiduciary
relationship is to be determined from the “actualities” of the relationship between the persons
involved. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). A fiduciary relationship is an
extraordinary one and will not be lightly created. Chapman Children’s Trust, 32 S.W.3d at 439; see
also Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997). Although the
existence of a confidential relationship is ordinarily a question of fact, when the issue is one of no
evidence, it becomes a question of law. Crim Truck & Tractor, 823 S.W.2d at 594.
                        As support for her claimed involvement in a confidential relationship, O’Neill offers
this affidavit testimony:


In addition to the sexual affair we were involved in, I trusted [Alcozer] not only with
my body, but with the secret that had come about as a result of our affair, and I
trusted him to protect me with my husband and I tried to protect his wife and him.


She also testified that she had known Alcozer for over ten years and been in a sexual relationship
with him for four years. O’Neill complains that they “worked together” to keep R. O.’s parentage
from their spouses, but that Alcozer betrayed her by discontinuing the payments.
                        O’Neill does not cite any case, and we have found none, declaring the existence of
a confidential relationship based on an extramarital affair. Even if O’Neill believed that her illicit 
relationship with Alcozer was one of mutual trust and confidence, her subjective trust is insufficient
to transform their dealing—which involved each acting in his or her respective best interest—into
a fiduciary or confidential relationship entitled to legal protection. See id. at 595; see also Hubbard
v. Shankle, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied) (romantic relationship
is not equivalent of husband-wife fiduciary relationship). Failure to exercise reasonable diligence
to protect one’s interests is not excused by mere confidence in the honesty and integrity of the other
party. Thigpen, 363 S.W.2d at 251; Squyres v. Christian, 253 S.W.2d 470, 472 (Tex. Civ.
App.—Fort Worth 1953, writ ref’d n.r.e) (confidential relationship would not excuse negligence in
enforcement of one’s rights and did not prevent expiration of statute of limitations).
                        In any event, the record reflects that the relationship between O’Neill and Alcozer
was anything but one of confidence and trust. O’Neill’s own words express her “hurt and
resentment” toward Alcozer, stemming from his “not acknowledging [their] child.” O’Neill testified
that she trusted Alcozer to deal fairly with her and she trusted his legal judgment, yet she sought her
own attorney for legal advice regarding R. O. O’Neill avers that she and Alcozer shared a mutual
trust “which shows in [their] working out the details of supporting [R. O.],” but O’Neill’s letters to
Alcozer demonstrate a unilateral demand for payment, not a negotiation between them based on
mutual trust. O’Neill further avers that “[she ] allowed the time to go by in which [she] could sue
under the [statute] because [Alcozer] was paying money and in a reasonable amount, voluntarily.” 
However, her professed confidence in Alcozer’s future payment—spanning all the years until R. O.
would turn 18—is inconsistent with her testimony that Alcozer failed to give her money for R. O.’s
education and back child support, as he had volunteered.
                        O’Neill has produced no proof demonstrating the existence of a confidential
relationship that imposed a duty on Alcozer to inform her of the statute of limitations. Taking the
testimony as a whole and in a light most favorable to O’Neill, we hold that O’Neill did not produce
evidence of justifiable trust and confidence as will create a confidential relationship.


CONCLUSION

                        We conclude that section 160.607(a) of the family code applies to R. O.’s claim
because a “child” with a presumed father is “another individual” included in the statute’s definition
of those who must bring suit within the four-year limitations period. Tex. Fam. Code Ann.
§ 160.607(a). We also find that the doctrine of equitable estoppel is inapplicable because O’Neill
was not induced to delay filing suit before the expiration of limitations and because O’Neill was not
in a confidential relationship with Alcozer.
                        Having found that Alcozer conclusively established the applicability of section
160.607(a) of the family code, that O’Neill filed suit after the expiration of the four-year statute of
limitations in section 160.607(a), and that O’Neill did not produce evidence raising a genuine issue
of material fact about the applicability of any exception to limitations, we affirm the trial court’s
summary judgment order.
 
                                                                                                                                                            
                                                                        Jan P. Patterson, Justice
Before Chief Justice Law, Justices Patterson and Puryear
Affirmed
Filed: April 21, 2005