### ALBRIGHT et al. v. HOYT et al.
### No. 4274.

Court of Civil Appeals of Texas. Texarkana. Feb. 8, 1933.

Rehearing Denied Feb. 16, 1933.

Lacy & Molhusen, of Longview, Geo. Prendergast, of Marshall, James T. Casey, of Longview, and Wm. Hodges, of Texarkana, for appellants.

T. B. Stinchcomb and Wynne & Wynne, all of Longview, and Prentice Wilson, of Dallas, for appellees.

SELLERS, Justice.

On May 21, 1931, Elbert Hoyt brought this suit against Albert Albright, John Albright, and James S. Smith, in the district court of Gregg county, Tex., alleging, first, an action in trespass to try title to 21⅓ acres of land, a part of the Jefferson Moseley survey located in Gregg county. In the second count in his petition, the plaintiff Elbert Hoyt has alleged at considerable length his title, specifically alleging, among other matters, a parol sale of the land to him by John Albright, and a written contract of sale to him by both Albert Albright and John Albright, and also alleged title by estoppel against John Albright.

The defendant John Albright answered by exception, general denial, and plea of not guilty. He further alleged that he was the owner of the fee-simple title to the land and that he had never at any time contracted to sell the land to the plaintiff Elbert Hoyt, and further that, if it should be found by the court that he had sold the land to the plaintiff Elbert Hoyt, then he alleged that he had rescinded the contract and leased the land to the defendant James S. Smith for oil and gas purposes. The defendant Albert Albright failed to answer. The defendant Smith by separate answer alleged that he was an innocent purchaser of an oil and gas lease on the land involved for value without notice of the title held by the plaintiff. Mrs. Ada M. Raynes intervened in the suit, claiming certain mineral rights in the land involved through a conveyance from the plaintiff Hoyt.

Plaintiff Elbert Hoyt, a negro, testified on the trial that John Albright, a white man, on November 22, 1928, sold him the land involved for the sum of $550, to be paid, $50 in cash, $50 in three months, and the balance in four years, payable at $100 per year. No notes were made, and nothing was mentioned about interest on the deferred payments; that John Albright was to make him a deed to the property when he finished paying for it. He further testified that he paid the $50 cash consideration and was placed in possession of the land by John Albright immediately after the purchase agreement was made, and that he had held possession continuously since that time through his tenants. He further testified that he had cleared up about one-half the land and placed permanent improvements on the property, specifying the particulars in which the property was improved. He further stated he was indebted to John Albright for materials to improve the place and for borrowed money, and that, when he made payments from time to time during the two years he had owned the property, such payments were placed on the indebtedness for the material and not on the land debt, John Albright indulging him more time in which to pay the land indebtedness; that he continued to make payments to John Albright until about the first of 1931, when oil was struck in Gregg county, at which time John Albright repudiated his trade with him and refused after a tender of the balance due him to make the plaintiff a deed to the property as he had agreed to do when the land was paid for. In April, 1931, John Albright executed an oil and gas lease on the property to James S. Smith.

John Albright testified that he owned the land in fee simple, having purchased it from his son, Albert Albright, in 1917. He denied that he had made any kind of contract with Elbert Hoyt to sell him the land, and stated, further, that he had only rented Hoyt the property, and that he was in possession as his tenant; that he never heard of Elbert Hoyt's claiming the property until about the first of the year 1931. He further denied that any tender of the balance due on the property had been made him.

The plaintiff Elbert Hoyt made a tender in his pleading of whatever amount the court might determine he was still indebted to John Albright for the land, and thereafter actually paid the amount found by the jury into court.

The case was tried to a jury, and was submitted on special issues, the answers to which are fully supported by the evidence and establish, among other facts, the following:

(1) That John Albright contracted and agreed to sell the land in controversy to Elbert Hoyt for the sum of $550, payable $50 cash, $50 in three months, and the remainder in four years.

(2) That Elbert Hoyt paid the cash consideration of $50 to John Albright on November 22, 1928.

(3) That Elbert Hoyt went into possession of the land under a contract of purchase from the defendants John Albright and Albert Albright.

(4) That John Albright knew that Hoyt was in possession of the land claiming to have purchased the same.

(5) That Hoyt made valuable improvements on the land in good faith believing that he had a contract to purchase.

(6) That the value of the improvements made by Hoyt was $200.

(7) That the rental value of the land since November 22, 1928, was $60.

(8) That, at the time defendant Smith purchased the oil, gas, and mineral lease on the land, Hoyt was in possession of the land in person or by tenant.

(9) That, at the time Smith purchased the mineral lease, he knew that Hoyt was in possession of the land by his tenant.

(10) That Smith knew, or could have ascertained by the exercise of ordinary care, that Hoyt was claiming the land under a contract of purchase.

(11) That a balance of $500 is still due from Hoyt on the purchase price of the land.

(12) That Hoyt had not paid any additional sum on the purchase price after the payment of the original cash consideration of $50.

Upon this verdict of the jury the court entered judgment for specific performance of the contract of sale by John Albright and decreed title to the land to Elbert Hoyt as against all defendants. He further decreed title for intervener against Elbert Hoyt for one-half interest in the mineral rights. He further decreed judgment for defendant Smith against defendant John Albright upon Albright's warranty for the amount paid by Smith for the oil and gas lease upon the land, which was the sum of $7,116. From this judgment defendants John Albright and James S. Smith have duly prosecuted this appeal.

We have not undertaken to make a full statement of the many angles of this case, since this court has concluded that the judgment is supported by the parol sales agreement between John Albright and Elbert Hoyt, and therefore all reference to the contentions made about the written contract and title by estoppel are immaterial.

■ The first proposition in appellants' brief makes the point that the judgment is void for the reason that the trial judge prior to the time of becoming judge of the 124th district court was a member of the firm of Campbell, Hurst & Lee, and that, while this lawsuit was pending Mr. Lee examined an abstract of title to the land involved in this suit for a Mr. Hill, who is not a party to this litigation, and gave Mr. Hill an opinion as to the title, and collected a fee for such services, a part of which went to Judge Hurst. But it was shown that Judge Hurst was not consulted, nor did he know anything about the title having been examined by Mr. Lee. All of this transpired before Judge Hurst was appointed judge of the 124th district court. Under the authority of Taylor v. Williams, 26 Tex. 583, we do not think such facts sufficient to show that Judge Hurst who tried the case was disqualified.

■■ The record presents to our minds a parol sale of the land by appellant John Albright to the appellee Elbert Hoyt with the understanding that John Albright would make Hoyt a deed to the property when Hoyt had finished paying for it. But appellants insist that, notwithstanding John Albright had made a valid oral contract of sale of the property, yet it was an executory contract, and, when Hoyt defaulted in his payments, Albright had a right to rescind the contract, which he did by conveying an interest in the property to appellant Smith. This is a correct proposition of law, but it is not without its exceptions. The undisputed facts show that the balance to be paid on the land was $50 in three months and $100 a year thereafter. The jury's findings established that no part of the consideration had been paid except the $50 cash at the time the trade was made. Therefore it follows that John Albright did not exercise his right of rescission immediately when the first installment became delinquent, but allowed Hoyt to continue for two years to improve the property and to remain in possession until the land became very valuable for oil. Under this state of facts, it would seem that Albright lost his right of rescission until he first gave Hoyt notice of his intention to rescind the contract and further gave him a reasonable time in which to pay the balance on the land and thereby protect his equities. Moore v. Brown, 46 Tex. Civ. App. 523, 103 S. W. 242; West Lbr. Co. v. Henderson et al. (Tex. Civ. App.) 238 S. W. 710; Erwin v. Daniels, 34 Tex. Civ. App. 378, 79 S. W. 61. The appellants further insist that Hoyt was given notice of Albright's intention to rescind the contract about the first of 1931, and that he failed to make payment of the balance due on the land until April of that year, when Albright rescinded the contract and executed the lease on the property to Smith. We have carefully considered all the evidence offered on the trial of the case, and we fail to find any that could be construed as a notice to Hoyt by Albright that he recognized the contract and intended to rescind the same at a future date if the balance due was not paid. All the evidence of John Albright is to the effect that he never made a sale of the property to Hoyt and recognized no right of Hoyt to the land whatever. If it is this character of notice that appellants rely upon to rescind the contract of sale, it is entirely insufficient. In other words, a notice to Hoyt by Albright

that he did not make the contract and would not be bound by it will not constitute notice to Hoyt that Albright recognized the contract and intended to rescind the same if the balance was not paid within reasonable time. The notice required and the notice given are, in our opinion, inconsistent. Hill v. James et al. (Tex. Civ. App.) 7 S.W.(2d) 910.

We do not concur with the contention that Smith, under the record, is an innocent purchaser for value. Smith claims title under John Albright. When he purchased from Albright, Hoyt was in possession through his tenant. Such possession was notice to Smith of all titles claimed by Hoyt to the land. Cardwell v. Shifflet (Tex. Com. App.) 294 S. W. 519. And we do not regard the rule announced in Eylar v. Eylar, in 60 Tex. 315, 316, in conflict with our holding.

We shall not prolong this opinion with a discussion of all appellants' propositions, but deem it sufficient to say that each of them has been carefully considered and is expressly overruled.

The judgment of the trial court is affirmed.