NO. 07-03-0537-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 7, 2005


______________________________



JOSE L. CARDENAS and GLORIA CARDENAS, 



 Appellants/Cross-Appellees


v.



JACK N. VARNER and JOYCE L. VARNER, 



 Appellees/Cross-Appellants

_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NO. 22,296; HON. TOM NEELY, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Jack and Joyce Varner sued Jose and Gloria Cardenas to recover upon a
promissory note and foreclose upon a vendor's lien securing payment of the note. The
Cardenas executed the note as partial payment for ranch land bought from the Varners. 
When the Cardenas discovered, after closing of the sale, that the acreage was less than
that represented by the Varners, they refused to pay the outstanding note balance. This
precipitated the aforementioned suit. In response, the Cardenas counterclaimed for breach
of the sales contract and warranties, asserting that they were sold less land than promised. 
Upon trial before the court, the trial judge reformed the purchase price of the land,
subtracted the difference from the outstanding balance due on the note, awarded the
Varners the remaining sum due, and permitted them to foreclose upon their lien. The
issues before us concern the reformation of the purchase price, the attorney's fees
awarded to the Varners, and the interest rates adopted by the trial court. We reverse in
part and affirm in part.

 First Issue - Reformation of the Agreement

 The first issue we address encompasses the trial court's reformation of the purchase
price. The Cardenas argue that it did not reduce the price enough while the Varners assert
that it had no basis to reduce it at all. We overrule the Cardenas' assertion and sustain that
of the Varners.

 No one disputes that the trial court attempted to reform the agreement struck by the
parties. Furthermore, the Cardenas believe that the trial court was authorized to do so
because the parties were mistaken about the actual amount of land encompassed in the
sale. Thus, equity purportedly entitled the trial court to make the changes to reflect the
actual property conveyed. Yet, in suing for redress, the Cardenas only pled causes of
action sounding in breached contract and warranties. And, as for relief, they sought only
damages in the amount of $204,800, plus court costs, attorney's fees, and interest. Their
live pleading said nothing about mistake (either mutual or otherwise) or reforming the terms
of the agreement. This is fatal since one must seek reformation in his live pleading to
acquire it. Rattan v. Dicker, 373 S.W.2d 306, 310 (Tex. Civ. App.-Dallas 1963, no writ);
accord Liu v. Yang, 69 S.W.3d 225, 229 (Tex. App.-Corpus Christi 2001, no pet.) (stating
that to be entitled to reformation of an agreement, a party must plead either mutual
mistake, unilateral mistake accompanied by fraud, or other inequitable conduct by the other
party). (1) So, because the Cardenas did not, they were not entitled to reformation of the
agreement. Cunningham v. Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983) (stating that
a party may not be granted relief in absence of pleadings to support that relief).

 The Cardenas, however, cite Scott v. Nunn Elec. Supply Corp., 386 S.W.2d 891
(Tex. Civ. App.-Amarillo 1965, no writ) and Gable Elec. Serv., Inc. v. Mims, 364 S.W.2d
292 (Tex. Civ. App.-Dallas 1963, no writ) for the proposition that the Varners waived any
complaint about the lack of pleading. Furthermore, they allegedly did so because they
invited the error by submitting to the trial court findings of fact and conclusions of law
encompassing the trial court's decision to reform the agreement. While Scott and Gable
indicate that one cannot complain about findings he solicited, we find the cases inapposite
for several reasons. First, the Varners are not complaining about the trial court's findings
of fact and conclusions of law. Second, the error at issue occurred before the findings were
submitted by the Varners. By that time, the trial court had already executed its final
judgment effectively reforming the agreement. So, it can hardly be said that the proffered
findings induced the trial court to act in an objectionable manner. 

 In sum, the conditions necessary to obtain any reformation of the agreement were
not satisfied. Thus, the trial court could not enter judgment granting relief which no one
sought and erred by doing so. 

 Second Issue - Attorney's Fees

 Next we address the dispute regarding attorney's fees. The Cardenas allege that
the trial court awarded the Varners too much because the Varners did not segregate the 
recoverable fees from those that were not. On the other hand, the Varners contend that
the trial court failed to award them enough. We agree with the Cardenas.

 First, we address the Varners' allegation that the trial court erred in not awarding
them attorney's fees to be incurred on appeal and in conducting the post-judgment
foreclosure. The record is bereft of evidence indicating what a reasonable fee would be
for pursuing those avenues. Without such evidence, the trial court lacked basis to award
them. Thus, we reject the Varners' contention. 

 Next, we address the allegation that the Cardenas were entitled to a reduction in
fees awarded to their opponents since the trial court reformed the agreement and lowered
the damages due the Varners. In other words, since they were partially victorious in
defending against the Varners' suit, the Cardenas believe that they should not have to pay
all the fees sought. Assuming that law exists supporting the argument, facts do not. 
Simply put, the foundation upon which it rests is the validity of the trial court's reformation
of the agreement. Because we have held that the trial court erred in that regard, there is
no basis to support the argument. Thus, we reject it. 

 Next, the Cardenas assert that the Varners did not properly segregate the fees. 
With this, we agree. One claiming attorney's fees has the burden to segregate those
recoverable from an opponent from those which are not. Natural Gas Clearinghouse v.
Midgard Energy Co., 113 S.W.3d 400, 416-17 (Tex. App.-Amarillo 2003, pet. denied);
accord Hruska v. First State Bank, 747 S.W.2d 783, 785 (Tex. 1988) (generally requiring
segregation of fees). Yet, segregation need not occur if the causes of action are
dependent upon the same set of facts or circumstances and, thus, are inseparable. 
Stewart Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 11-12 (Tex. 1991); Natural Gas
Clearinghouse v. Midgard Energy Co., 113 S.W.3d at 416-17. 

 Here, the Varners sought to recover approximately $45,000 in attorney's fees. The
billing summary tendered into evidence illustrated that those fees encompassed action 
taken to prosecute their claims against the Cardenas and founded upon the promissory
note. Yet, so too did it disclose that fees incurred in prosecuting causes of action against
defendants other than the Cardenas were also included in the sum. Moreover, the causes
of action asserted against the other defendants and operative facts underlying them were
distinct from those entitling the Varners to recovery against the Cardenas. 

 The Varners cite us to no authority obligating the Cardenas to pay for attorney's fees
incurred by the Varners in prosecuting distinct claims against distinct parties and involving
distinct facts. Thus, they were obligated to segregate the recoverable fees from those that
were not. And, while the trial court awarded less fees than requested (approximately
$40,000 instead of $45,000), we cannot say, upon the record before us, that the difference
equaled the amount incurred in prosecuting the claims against the other defendants. Thus,
the issue of fees must be remanded to the trial court. Stewart Title Guaranty Co. v.
Sterling, 822 S.W.2d at 12.

 The same can be said of the fees incurred in defending against the Cardenas'
counterclaim. The latter was based not upon the note and vendor's lien. Nor did they
attempt to vitiate or otherwise alter either instrument. (2) Rather, they sued for breach of the
underlying sales contract. Furthermore, the damages sought represented the difference
in cost between the acreage they thought they acquired and the acreage that they actually
received. The difference was then to be used to reduce (by offset) the sum due under the
note. So, while there was some relationship between the claims, the causes of action
differed. Moreover, the operative facts upon which they depended were not so intertwined
as to be inseparable. Thus, the fees incurred by the Varners in prosecuting their claims
were capable of segregation from those incurred in defending against the counterclaim.

 Third Issue - Pre and Post-Judgment Interest 

 The Cardenas next complain about the trial court's application of the default interest
rate to the sums found outstanding. That rate, as specified in the note, was 18% per
annum. Furthermore, their argument is two-fold. We address each part in turn.

 First, they assert that because the trial court afforded them some relief by reforming
the agreement, they were not in default. Our having determined that the trial court erred
in reforming the contract price vitiates this contention, however. 

 The next ground of contention concerns the acceleration of the note payments. 
According to the Cardenas, no evidence exists of record establishing that the Varners
accelerated payment of the note prior to the date of suit. And, because of that
circumstance, the trial court could not order that the entire balance under the note accrue
interest at 18% from the date the Cardenas first failed to make an installment payment. We
agree.

 The promissory note executed by the Cardenas had a principal of $185,000. That
principal, with accrued interest, was to be paid through equal annual installments of
$34,448.66. The first installment was due on December 15, 1998, and it is undisputed that
the Cardenas made one payment of $34,448.66. Under the terms of the note, the second
payment was due on December 15, 1999. However, it was not paid, nor was any other.
The Varners then sued to collect the entire principal on July 27, 2000, or approximately five
months before the third installment fell due. And, the allegation in their petition and
pertaining to acceleration simply involved the statement that "all sums due and owing under
the terms of said note have been declared accelerated and past due and owing." 

 Our review of the record uncovered no evidence illustrating that the Varners ever
notified the Cardenas of their intent to accelerate the note. Similarly undiscovered was 
evidence of actual acceleration any time before July 27, 2000. Nor did either party cite us
to any such evidence. Nonetheless, the trial court ordered, via its judgment, that interest
accrue on the entire unpaid principal at the rate of 18% from December 15, 1998. The
latter date was one year before the second installment was due and the Cardenas
breached the terms of the note. 

 To lawfully accelerate a promissory note (assuming, of course, the creditor has the
right to accelerate), the creditor must afford the debtor notice of its intent to accelerate and
of actual acceleration. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566-67
(Tex. 2001); Baldazo v. Villa Oldsmobile, Inc., 695 S.W.2d 815, 817 (Tex. App.-Amarillo
1985, no writ). Moreover, notice that the debt was accelerated has no legal effect unless
preceded by notice of intent to accelerate. Baldazo v. Villa Oldsmobile, Inc., 695 S.W.2d
at 817. Given the want of evidence illustrating that the Cardenas were ever notified of the
Varners' intent to accelerate, the Varners did not prove lawful acceleration. Thus, the trial
court erred in not only concluding that the entire unpaid principal was due on December 15,
1998, but also that interest at the default rate (or 18%) accrued on the entire sum as of that
date. 

 Fourth Issue - Post-Judgment Interest on Attorney's Fees and Court Costs

 Next, the Cardenas allege that the trial court erred in ordering that interest accrue
at the rate of 10% on the award of attorney's fees. The correct rate was 5%, they contend.
The Varners concede the issue. Therefore, we sustain it. 

 Final Issue - Award of Cost for Survey

 The final issue before us involves that portion of the judgment awarding the
Cardenas "their survey costs in the amount of $7,000.00." The Varners contend that the
trial court had no basis for doing so. We sustain the issue.

 To the extent the award may have been made as part of the assessment of court
costs, we note that the survey in question was not ordered by the trial court. See Tex. R.
Civ. P. 796 (allowing the trial court to appoint a surveyor to survey the premises in
controversy). Nor did the trial court appoint the surveyor. Authority holds that if the
surveyor is not appointed by the court and acts solely on behalf of one party, his fees may
not be assessed as costs. Whitley v. King, 581 S.W.2d 541, 544 (Tex. Civ. App.-Fort
Worth 1979, no writ). Given Whitley and the evidence indicating that the Cardenas
unilaterally hired the surveyor, the fees incurred in conducting a survey cannot be taxed to
the Varners as court costs. 

 

 Nor can the award be viewed as damages or relief due to any purported breach of
contract. While it may be that the Varners allegedly agreed to provide their opponents with
a survey and ultimately did not, nothing was said about the obligation in the counterclaim
filed by the Cardenas. So too did the Cardenas omit from their live pleading any request
for equitable relief; thus, their suggestion on appeal that the fee was awarded "as an
equitable remedy" lacks foundation. Finally, no one posits that the cause of action entitling
the Cardenas to recover the expense was tried by consent. Because the relief granted
must conform to the live pleadings, Tex. R. Civ. P. 301; see Cunningham v. Parkdale Bank,
660 S.W.2d at 812-13 (stating that a party may not be granted relief in absence of
pleadings to support that relief), and the relief in question was not encompassed by the
Cardenas' pleadings, the trial court erred in awarding it. See Cunningham v. Parkdale
Bank, 660 S.W.2d at 812-13 (stating that a judgment must be supported by the pleadings,
and, if it is not, then it is erroneous). 

 In sum, we reverse that portion of the judgment reforming the purchase price of the
land and, thereby, reducing the outstanding principal of the promissory note by $57,767 to
$105,914.00 and render judgment that the unpaid principal was and is $163,681.00. Next
we reverse that portion of the judgment awarding the Varners their attorney's fees, sever
that issue from this appeal, and remand it to the trial court. Next, we reverse that portion
of the judgment awarding the Cardenas $7,000 for the cost of the survey. Finally, we
reverse that portion of the judgment declaring that prejudgment interest accrue on the
entire unpaid principal at the rate of 18% from December 15, 1998, until judgment and
remand the issue to the trial court for further proceedings. In all other aspects, the
judgment is affirmed.


 Brian Quinn 

 Chief Justice
1. The Cardenas do not assert in their appellate brief that the theory was tried by the consent of the
parties.
2. It should be recalled that the Cardenas did not include in their live pleading a demand for reformation
of the note or lien.



nd 6 were void and without effect as to Section 33.
 
(e) Geodyne and Arrington failed to meet their summary judgment burden
of proof on their affirmative defense of quasi estoppel, so as to preclude
Cambridge’s Second Motion for Summary Judgment.
In its third issue, Cambridge contends: “Based on the summary judgment evidence, the
Court should reverse the Final Judgment to the extent it grants Defendants’ Motion for
Summary Judgment and render judgment granting Cambridge’s Second Motion for
Summary Judgment on Grounds No. 1, 2, 5 and 6.” 
          The first ground of Cambridge’s Second Motion for Summary Judgment posited
that Cambridge was entitled to judgment because it was undisputed that the primary term
of the Section 33 leases expired prior to July 19, 1983, and, since January 1, 1980, no oil,
gas, or other minerals had been produced from Section 33 or from lands pooled therewith
and that no delay rentals or shut-in royalty payments were made in connection with
Section 33 leases. Ground No. 2 argued that the last of the Initial Unit Designations was
executed on February 2, 1982, and that by June 12, 1990, the owners of the Section 33
leases knew that the initial Unit Designations did not include the perforated interval in the
Prater No.1-39 Well, which was located in the interval of 14,364 feet to 14,372
subsurface, and any claims of the appellees were barred by the four year statute of
limitations contained in Tex. Civ. Prac. & Rem. Code §16.051. Ground No. 6 argued that
the uncontroverted summary judgment evidence established as a matter of law that at the
time appellees executed and filed the Amended Unit Designations of record, the Section
33 leases had terminated.
          In responding, appellees present four issues for our review. Those issues are: 
Issue One: The Trial Court acted within its discretion in declaring that the 
Prater Gas Unit (including the original Unit Designation, the Initial Unit
Designations, and all Amended Unit Designations) and Section 33 Leases
are in Full Force and Effect.
 
A. The Trial Court correctly found an obvious error in the description of the
Prater Unit and a basis for correcting the obvious error.
 
B. The Trial Court correctly held that Unit Designations 5 and 6 were
effective to amend the Unit Designation to include the stratigraphic
equivalent of 14,364 feet to 14,929 feet below the surface.
 
C. The Trial Court correctly held that production from the Prater 1-39 Well
perpetuated the Prater Unit and the Section 33 Leases.
 
Issue Two: The Trial Court correctly declared that the New Section 33
Leases constitute clouds on Appellees’ title and are void and of no force
and effect.
 
A. Cambridge did not conclusively establish that the Section 33 Leases
terminated prior to March 3, 1999.
 
B. The issue of the four-year statute of limitations barring reformation of the
Unit Designations is irrelevant.
 
C. The Unit Designations were patently ambiguous.
 
D. Unit Designations 5 and 6 are valid and in full force as to Section 33.
 
Issue Three: The Trial court correctly denied Appellant’s Motion for Partial
Summary Judgment as to quasi estoppel.
 
(a) Geodyne and Arrington met their summary judgment burden of proof on
their affirmative defense of Quasi Estoppel.
 
Issue Four: The Trial Court was correct in refusing to find that Appellant
was a bona fide purchaser vis-a-vis the New Section 33 Leases.
 
          The standards to be used in reviewing summary judgments are, by now, axiomatic. 
In reviewing cross-motions for summary judgment, the reviewing court considers whether
a movant establishes that there is no genuine issue of material fact so that the movant is
entitled to judgment as a matter of law. Western Investment, Inc. v. Urena, 162 S.W.3d
547, 550 (Tex. 2005). When parties file cross-motions for summary judgment and the
court grants one motion and denies the other, the reviewing court should review both
sides’ summary judgment evidence and determine all questions presented. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). If the trial court’s order
does not specify the grounds upon which it granted summary judgment, the appellate
court must affirm the summary judgment if any of the summary judgment grounds are
meritorious. Id. 
          Because it is dispositive of this appeal, we proceed directly to consider appellees’
issue three in which they argue that they met their summary judgment burden of proof on
their affirmative defense of quasi estoppel, and issue number four in which they contend
the trial court was correct in refusing to find Cambridge was a bona fide purchaser vis-a-vis the new Section 33 leases. 
          Quasi estoppel is similar to but different from equitable estoppel. While equitable
estoppel requires proof of a false statement or detrimental reliance, quasi estoppel
requires no such showing. Rather, it precludes a party from accepting the benefits of a
transaction and then taking a subsequent inconsistent position to avoid corresponding
obligations or effects. It applies when it would be unconscionable to allow a person or
party to maintain a position inconsistent with one in which he acquiesced or from which
he accepted a benefit. See Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 548 (Tex.
App.–Austin 1999, pet. denied); Atkinson Gas Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex.
App.–Corpus Christi 1994, writ denied); Steubner Realty 19, Ltd. v. Cravens Road 88,
Ltd., 817 S.W.2d 160, 164 (Tex. App.–Houston [14th Dist.] 1991, no writ.)
          Because Cambridge has no rights in Section 33 as a top lessee except such rights
as it might have acquired under the new Section 33 leases, it cannot terminate the Prater
Unit if the necessary defendants (the Section 33 mineral interest owners) have no such
right. The summary judgment evidence is undisputed that the Section 33 mineral interest
owners have accepted the benefit of revenues of production from the Prater No. 1 well. 
It is also undisputed that the Prater No. 1 well is not located on Section 33. Thus, the
Section 33 mineral interest owners would not have received the royalties they have
received over the years but for the Unit Designation of Prater No. 1. Cambridge’s claim
to title under the new Section 33 leases must rest upon repudiation by the top lessors of
Geodyne’s Section 33 leases. In doing so, they would, of necessity, be asserting a right
inconsistent with the benefits that were previously accepted by them. Thus, appellees met
their summary judgment burden of proof and established quasi-estoppel as a matter of
law.
          Additionally, under this record, the trial court did not err in refusing to find that
Cambridge was a bona fide purchaser in connection with the new Section 33 leases. A
bona fide purchaser of real property is one who buys property in good faith for valuable
consideration and without notice (actual or imputed) of outstanding claims in a third party
and is an affirmative defense to a title dispute. Madison v. Gordon, 39 S.W.3d 604, 606
(Tex. 2001); Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S.W. 1149, 1152 (1911).
Notice may be constructive or actual. Flack v. First Nat’l Bank, 148 Tex. 495, 226 S.W.2d
628, 631 (1950). Actual notice rests upon personal information or knowledge. Id. at 631. 
Constructive notice is notice the law imputes to a person not having personal knowledge. 
Id. at 632. One purchasing land may be charged with constructive notice of an occupant’s
claims. Madison v. Gordon, 39 S.W.2d at 606. This implied notice doctrine applies if a
court determines that the purchaser has a duty to ascertain the rights of a third party
possessor. Id.; see also Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 460 (1904). 
 When this duty arises, the purchaser is charged with notice of all the occupant’s claims
that the purchaser might have reasonably discovered on proper inquiry. Madison v.
Gordon, 39 S.W.2d at 606; see also Dixon v. Cargill, 104 S.W.2d 101, 102 (Tex. Civ. App.
–Eastland 1937, writ ref’d). The duty arises, however, only if the possession is visible,
open, exclusive, and unequivocal. Madison v. Gordon, 39 S.W.3d at 606; Strong v.
Strong, 128 Tex. 470, 98 S.W.2d 346, 350 (1936).
          Indeed, in Strong, the court described the possession necessary to give
constructive notice as consisting “of open, visible, and unequivocal acts of occupancy in
their nature referable to exclusive dominion over the property, sufficient upon observation
to put an intending purchaser on inquiry as to the rights of such possessor . . . . “ Strong
v. Strong, 98 S.W. 2d at 350. “Possession that meets these requirements – visible, open,
exclusive, and unequivocal possession – affords notice of title equivalent to the
constructive notice deed registration affords.” Madison v. Gordon, 39 S.W. 3d at 607.
          The case of Albright v. Hoyt, 57 S.W.2d 342 (Tex. Civ. App.–Texarkana 1933, writ
ref’d), is also instructive in determining whether possession by a land purchaser’s tenant
was sufficient to give constructive notice to an oil and gas lease purchaser’s bona fide
purchaser claim. In that case, Hoyt had brought suit against Albright to enforce a contract
for the sale of land. After the discovery of oil on the land, although Hoyt had paid the
purchase price of the land, Albright refused to surrender title to him and executed an oil
and gas lease to James S. Smith. Noting that at the time when Smith obtained the lease
from Albright, Hoyt’s tenant was in possession of the land, the court held that the
possession by the tenant constituted notice to Smith “of all titles claimed by Hoyt to the
land.” Id. at 345. Thus, it affirmed the trial court’s verdict in favor of Hoyt.
          At the time Cambridge obtained its “top leases,” Geodyne, as a working interest
owner, was in possession of the Prater Unit, was operating a producing well on the Unit 
and was paying and had been paying royalties from production on that Unit to Geodyne’s
lessors. Had Cambridge made reasonable inquiry as to the basis upon which Geodyne
was “in possession” of the well and was paying royalties from production to Geodyne’s
lessors, it would have discovered the basis upon which Geodyne claimed in connection
with the Unit Designation and the Section 33 leases.
          Additionally, we note the provisions in the new Section 33 leases that in the event
“there is a presently existing oil and gas lease, modification thereof or unitization
agreement covering the Leased Premises,” that the new leases would be subject thereto
and would vest upon the termination of such prior leases, insofar as they might be valid
as well as the provision that the lessee might take whatever actions that were necessary
to obtain releases of such prior leases. Those provisions indicate that Cambridge
recognized that it stood in the position of the necessary parties insofar as the existence
of the Section 33 leases and could claim no greater rights than its lessors. Those
provisions also militate against any bona fide purchaser claim by Cambridge.
          In sum, for the reasons we have articulated above, the trial court’s summary
judgment must be, and is hereby, affirmed. 
 
John T. Boyd
Senior Justice